No. 22,871.

C. L. KIMBLE, *Appellant, v.* THE INDEPENDENCE GAS COMPANY, *Appellee,*

No. 22,872.

C. L. BLOOM, *Appellant,* v. THE INDEPENDENCE GAS COMPANY, *Appellee.*

SYLLABUS BY THE COURT.

1. SALE—*Gas Distribution Plant—Contract to Furnish Gas to Certain Officers and Stockholders Free of Cost—Contract Unenforceable—Against Public Policy.* Where the officers of a corporation negotiate a sale of its property, which includes a gas-distribution plant, and a supplemental contract is entered into between the buyer and a number of the stockholders, some of them being officers who participated in making the sale, by which as a part of the consideration he agrees to furnish them gas for domestic use free of cost, such supplemental contract is unenforceable because against public policy.

2. SAME—*Contract Not Binding on Purchasers at Judicial Sale.* Where one buys a gas-distributing plant and as a part of the consideration

agrees to supply gas free of cost to certain individuals so long as he, his successors or assigns shall furnish gas to customers in the city, and such plant is sold at a judicial sale discharged of all debts and obligations of the former owner, the purchaser is not bound by the agreement to supply free gas, assuming it to have been valid between the parties.

Appeal from Montgomery district court; JOSEPH W. HOLD-REN, judge. Opinion filed April 9, 1921. Affirmed.

*T. H. Stanford*, of Independence, for the appellants.

*J. B. Tomlinson*, of Independence, for the appellee.

The opinion of the court was delivered by

MASON, J.: About February 1, 1904, the Consolidated Gas, Oil & Manufacturing Company, a corporation, sold to R. M. Snyder its rights to a supply of natural gas and its gas plant in Independence. As a part of the same transaction but by a separate writing executed later, Snyder agreed to furnish to five stockholders of the corporation gas for domestic purposes for use in their respective residences free of cost, "as long as natural gas may be produced and furnished by said party of the first part [Snyder], his successors and assigns, to customers in said city." Snyder furnished free gas under his contract, and so did the Kansas Natural Gas Company, to which he sold the plant. Receivers of that company on order of the Federal court sold the gas-distributing plant to J. C. Smith, who sold it to the Independence Gas Company. That company refused to continue the free service. Two of the stockholders, C. L. Kimble and C. L. Bloom, sued the last-named company —each in a separate action—seeking an injunction against the continuance of such refusal. Each plaintiff appeals from an order denying a temporary injunction.

1. The contract for the sale by the Consolidated Company to Snyder was signed in its behalf by its president and secretary, C. L. Bloom being the president. C. L. Kimble was a director. The five persons to whom free gas was agreed to be furnished comprised all its stockholders excepting two, a savings bank in Rhode Island and Ernest Sewell. We think the supplementary contract was unenforceable as against public policy. It was necessarily negotiated by individuals—on be-

half of the company by its officers and directors. The agreement of Snyder to furnish free gas did not inure to the benefit of the corporation but was for the advantage of persons, some of whom represented it in the negotiations for the sale. If the theory that the corporation in effect consists of the stockholders is applied the situation is not changed because not all of the stockholders were in the favored list. Where an agent makes a contract for his principal any agreement by which he is to receive a personal advantage is invalid, not because he is presumed to have been corruptly influenced thereby, but because it is against the policy of the law that he should be exposed to the temptation of such influence. (*Peckham v. Lane,* 81 Kan. 489, 495-497, 106 Pac. 464; 13 C. J. 415-419.)

2. Even assuming that the contract was valid as between the parties to it, and that the plaintiffs could have required Snyder to furnish them gas so long as he owned the plant, it does not follow that the same obligation rests upon the defendant. The contract was not in terms made binding upon the successors and assigns of Snyder. The only expression it contained that might be regarded as showing an intention to give it that effect was the one above quoted by which he agreed to furnish gas to the plaintiffs and the other favored stockholders as long as natural gas should be produced and furnished by him, his successors and assigns, to customers in the city. Read literally this is a mere personal contract of Snyder to furnish gas for a period defined as that during which he or his successors or assigns should produce and furnish gas in Independence. An interpretation is not to be favored which would result in a practically permanent arrangement by which a public utility would serve certain individuals without charge, in derogation of the principle of uniformity of service and rates. The receiver's bill of sale of the Independence distributing plant (which was only a part of the property bought by Snyder from the Consolidated company) described it as passing "free, clear and discharged of and from all of the debts and obligations of the Kansas Natural Gas Company." In view of these considerations we hold that apart from the question of the validity of the original agreement the defendant cannot be required to supply gas to the plaintiffs without charge.

The judgments are affirmed.