(626 P.2d 1192)

No. 51,080

Evco Distributing, Inc., *Appellant,* v. Jack Brandau, *Appellee.*

Petition for review denied September 25, 1981.

Opinion filed April 24, 1981.

*Jack N. Stewart* of Hampton, Royce, Engleman & Nelson, of Salina, for the appellant.

*William L. Winkley,* of Salina, for the appellee.

Before ABBOTT, P.J., REES and SPENCER, JJ.

SPENCER, J.: Plaintiff has appealed from a judgment denying a permanent injunction and damages against defendant, its former employee. Defendant has cross-appealed from the judgment which denied his counterclaim for one month's compensation of $3,000.

Much testimony was adduced at trial, establishing in detail the background of the parties' business relationship. It is not necessary, however, to conduct a lengthy review of the testimony in order to reach the issues presented.

At the time of entering Evco's employ, Brandau entered into a written contract of employment dated May 3, 1976, which contained a non-competition clause, in substance as follows:

"3. For a period of one year following termination of employment of the Employee (but in no event beyond December 1, 1976) the Employee agrees that he shall not, directly or indirectly, engage in any business of the same or similar character to the business heretofore conducted by Evco within the territory served by Evco . . . ."

. . .

"In consideration of such covenant not to compete, Evco hereby agrees to pay to the Employee the aggregate sum of $40,500.00, payable as follows:

| | |
|---|---|
| May 1, 1976 | $12,500.00 |
| May 1, 1977 | $14,500.00 |
| May 1, 1978 | $13,500.00 |
| Total | $40,500.00" |

Pursuant to this portion of the agreement, Brandau received the first scheduled installment. The contract also provided:

"So long as the Employee continues as an Employee of Evco he shall devote his entire time and attention to the business and affairs of Evco."

Several days prior to May 1, 1977, the date the second installment was due, Evco accused Brandau of having breached his agreement by attempting to develop, construct and market a fiberglass dry fertilizer spreader box, potentially competitive with products marketed by Evco. Due to this asserted breach, Evco refused to pay the second installment of $14,500.

The dispute between the parties was apparently resolved when on August 25, 1977, the parties entered into two new agreements, referred to as exhibits "C" and "D." Under these agreements, Brandau was not to compete with Evco for a period of two years following termination of his employment, but such was in no event to extend beyond August 31, 1979; Evco agreed to pay the

remaining two installments provided for in the May 3rd contract, and did pay to Brandau the second installment with interest. On the next day Brandau submitted his resignation to Evco, which was formally accepted on August 27, 1977.

Several weeks later, Brandau entered into the employ of Lor-Al Corporation, a competitor of Evco in the agricultural equipment market. Evco consequently initiated suit against Brandau, seeking temporary and permanent restraint of defendant Brandau and damages, all pursuant to non-competition provisions contained in agreements "C" and "D," which purportedly extended the covenant not to compete as set forth in the May 3rd contract for a period of two years following termination of employment, but in no event beyond August 31, 1979.

Pursuant to plaintiff's petition, the trial court conducted evidentiary hearings relative to the issuance of a temporary injunction against Brandau, with such relief being granted in favor of Evco pending further order of the court.

Following trial on the merits, the court entered findings of fact and conclusions of law. Relevant portions are in substance: (1) Consideration existed for the employment contract of May 3, 1976, which provided for payment to Brandau of $40,500 if he did not terminate his employment and compete with Evco prior to December 1, 1976. (2) No new consideration was provided by Evco to support agreements "C" and "D" as Evco was already bound to pay the two remaining installments of the $40,500 promised Brandau in the contract of May 3rd, and Brandau was then unconditionally entitled to that sum in that he did not leave Evco's employment and compete prior to December 1, 1976. (3) No new consideration was provided by Evco by reason of its claim of settlement in good faith of a bona fide dispute between the parties, *i.e.,* by agreeing to pay the non-competition sums promised by the May 3, 1976, contract despite Brandau's unfaithfulness during the term of his employment. (4) No new consideration was provided by Evco's agreement to advise Brandau as to whether his subsequent participation in business would be deemed a violation of his covenant not to compete as set forth in agreements "C" and "D." The trial court also concluded Evco's purpose in obtaining Brandau's execution of contracts "C" and "D" was to eliminate competition; and that Evco had no intention of continuing to employ Brandau since the relationship

of the parties was unsatisfactory to both, and Evco knew Brandau would resign immediately.

Based on these conclusions, the trial court held Brandau was entitled to the final non-competition installment of $13,500, pursuant to the May 3, 1976, contract, but that Brandau was not entitled to back compensation of $3,000 as he had violated the contract provision calling for him to devote his entire time and attention to Evco's business while in its employ.

Evco first contends the trial court's order of February 17, 1978, granting Evco a temporary injunction against Brandau pursuant to the terms of the non-competition provisions contained in agreements "C" and "D," rendered the issue of Evco's consideration for such agreements res judicata. Specifically, Evco relies upon the trial court's finding at that time that agreements "C" and "D" were freely and voluntarily entered into by the parties, that consideration for said agreements was presumed, and there was no evidence to rebut such presumption. Evco's reliance on such finding is misplaced.

In *Comanche County Hospital v. Blue Cross of Kansas, Inc.,* 228 Kan. 364, 613 P.2d 950 (1980), we find:

"The purpose of a temporary injunction is not to determine any controverted right, but merely to prevent a threatened act which might perpetrate an injury, lessen the value of a claimed right or cause total loss of a claimed right pending final determination of the controversy between the parties. The grant of a temporary injunction would not be proper if it would appear to accomplish the whole object of the suit without bringing the cause or claim to trial. A temporary injunction merely preserves the status quo until a final determination of a controversy can be made. *In re Sharp,* 87 Kan. 504, 124 Pac. 532 (1912); 61 A.L.R. 925; 42 Am. Jur. 2d, Injunctions § 13, pp. 740, 741." 228 Kan. at 366.

In *Jayhawk Equipment Co. v. Mentzer,* 191 Kan. 57, 61, 379 P.2d 342 (1963), it is stated:

"The doctrine of *res judicata* is plain and intelligible, and amounts simply to this—that a cause of action once finally determined, without appeal, between the parties, *on the merits,* by a competent tribunal cannot afterwards be litigated by a new proceeding, either before the same or any other tribunal." Emphasis added.

Clearly, a determination made pursuant to an order granting a temporary injunction is not a determination on the merits and the principle of res judicata did not bar a determination of the issue of consideration at trial on the merits.

Evco next argues the primary issue involved in this appeal: Whether the trial court erred in concluding no new consideration

was provided by Evco to support agreements "C" and "D" based upon Evco's alleged relinquishment of its claim that Brandau had violated the non-competition clause of the May 3, 1976, agreement. Evco asserts this alleged relinquishment constituted consideration in the form of forbearance from asserting a claim.

As presented to the trial court and as is reflected in the pretrial order, the basis of Evco's contention was:

"Evco and Brandau signed an Employment Agreement May 3, 1976 (Exhibit 'A' of Plaintiff's Petition) containing a noncompete clause extending to December 1, 1976, and providing that Evco would pay Brandau $40,500.00 in installments . . . . During the summer and fall of 1976, Brandau became involved in a project to develop and market a fiberglass dry spreader box. Evco confronted Brandau with these facts and claimed that such activity by Brandau violated the noncompete clause of the Employment Agreement and therefore Evco did not owe Brandau the remaining installments . . . ."

The principle that forbearance may constitute consideration to support a contract is established in Kansas. In *Schiffelbein v. Sisters of Charity of Leavenworth,* 190 Kan. 278, 280, 374 P.2d 42 (1962), it was stated:

"Forbearance to sue can be good consideration for a promise, regardless of the actual validity of the claim, if the one who forbears has a reasonable and sincere belief in its validity.

'The view is taken that a reasonable and sincere belief in the validity of the claim is necessary and sufficient. It is sometimes stated that if an intending litigant bona fide forbears a right to litigate, he gives up something of value. The reality of the claim which is given up must be measured, not by the state of the law as it is ultimately discovered to be, but by the state of the knowledge of the person who at the time has to judge and make the concession.' (12 Am. Jur. p. 581, sec. 87.)"

Two conditions were necessary to trigger violation of the "covenant not to compete" contained in the May 3, 1976, employment agreement: (a) Brandau's termination of employment prior to December 1, 1976; and (b) Brandau's engagement in competition with Evco in the agricultural equipment market. As the trial court correctly reasoned, the undisputed fact Brandau was not terminated from Evco's employ until August, 1977, necessarily negates any claim that the covenant not to compete was violated by Brandau. This in turn negates any reasonable claim of forbearance on Evco's part. Nor do the provisions of agreements "C" and "D" in any way refer to Eyco's alleged forbearance as constituting consideration for Brandau's extended covenant not to compete. In fact, nothing within these agree-

ments purports to require Evco to relinquish or forbear litigating any claim it might then have had against Brandau.

Furthermore, although thirty days' prior written notice was required to terminate Brandau's employment under the contract of May 3, 1976, his employment under agreements "C" and "D" was subject to being terminated "[a]t the will of either party hereto upon the giving of either verbal or written notice that this Agreement shall be terminated immediately or at some subsequent date specified in such notice." The court found Evco's only purpose in obtaining Brandau's execution of contracts "C" and "D" was to eliminate competition and that Evco had no intention of continuing to employ Brandau. As we are here considering a covenant not to compete as contained within an employment contract, under which there was to be in fact no employment, there was an obvious failure of consideration. An anti-competition covenant, which is ancillary to a contract of employment freely entered into with full knowledge, is valid and enforceable if the restraint contained therein is reasonable under the facts and circumstances. However, only a legitimate interest may be protected by a covenant not to compete and a restrictive covenant is unreasonable if the real object is merely to avoid ordinary competition. *Eastern Distributing Co., Inc. v. Flynn*, 222 Kan. 666, 567 P.2d 1371 (1977).

The only other issue raised by Evco we deem necessary to address is the question of whether paragraph 5 of agreement "D" provided consideration for the agreements in question. That paragraph provided:

"In the event Jack Brandau desires to enter into any business operating in the trade territory of Evco Distributing, Inc., he shall have the right to provide Evco Distributing, Inc. with written notification of such desire and Evco Distributing, Inc. agrees that within 30 days of receipt of such written notification, it will advise Jack Brandau in writing as to whether or not Evco Distributing, Inc. will consider the participation by Jack Brandau in such business to be a violation of the provisions of the covenant not to compete set forth in Paragraph 6 of that certain Agreement by and between Evco Distributing, Inc. and Jack Brandau dated August 25, 1977."

Contrary to the conclusions of the trial court, Evco contends this paragraph imposed a duty on Evco which it did not previously have, and that such duty constituted a detriment to Evco sufficient to provide consideration for the promises of Brandau.

This paragraph merely set forth a procedure by which Brandau

might determine whether his prospective employment would be viewed as a violation of the new non-competition covenant contained in agreements "C" and "D." No actual benefit was provided Brandau, as he was not in any degree excused from the operation of the non-competition provisos; likewise, no real detriment was borne by Evco as the latter was not required to excuse Brandau. The paragraph was but a by-product of Brandau's new covenant not to compete, without which the provision would have been nonexistent.

In upholding the judgment of the trial court, we are not unmindful of the principle of law which creates the factual presumption of consideration in all contracts. *Ferraro v. Fink,* 191 Kan. 53, 379 P.2d 266 (1963). This same principle, however, declares that the presence of a benefit or detriment to a promisor, sufficient to constitute consideration, is a question of fact, as is the question of what constitutes consideration when that issue is controverted. *Ferraro,* 191 Kan. at 56-57. We have reviewed the record on appeal and find that the trial court's holding is supported by both the evidence and the applicable law.

This conclusion applies with equal force to the portion of the trial court's judgment denying Brandau's counterclaim for compensation in the sum of $3,000.

Brandau attempts to minimize the legal effect of his involvement in the fiberglass spreader box affair, contending he did not breach his covenant to devote his entire time and attention to the business affairs of Evco when his activities respecting the project were conducted on his own time and the project did not reach the mass-manufacturing stage.

As a general rule, an unfaithful servant forfeits compensation he would otherwise have earned but for his unfaithfulness. *Henderson v. Hassur,* 225 Kan. 678, Syl. ¶ 7, 594 P.2d 650 (1979); 3 Am. Jur. 2d, Agency § 219; Annot., 88 A.L.R.2d 1437, § 3.

Despite Brandau's argument in mitigation of his acts, his violation of the basic tenet of loyalty to his employer is made especially clear when it is considered that the policy of the law requiring an agent's loyalty is to remove from the agent all possible temptation to neglect his principal's interest in favor of his own. See *Kimble v. Gas Co.,* 108 Kan. 697, 196 Pac. 1063 (1921). The policy is best expressed at 3 Am. Jur. 2d, Agency § 220, p. 594:

"For reasons of public policy the law does not permit an agent to assume any relationship antagonistic to his duty to his principal, and the underlying basis of the rule is to shut the door against temptation and keep the agent's eye single to the rights and welfare of his principal. An agent is duty bound not to act adversely to the interest of his employer by serving or acquiring any private interest of his own in antagonism or opposition thereto, and this is a rule not only of law but of common sense and honesty as well."

Accord, 3 C.J.S., Agency § 273, p. 40.

Affirmed.