MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, Plaintiff,

v.

Roland H. de LINIERE, Defendant.

Civ. A. No. C83–2023A.

United States District Court,
N.D. Georgia,
Atlanta Division.

Oct. 12, 1983.

Phillip S. McKinney, Atlanta, Ga., for plaintiff.

Thomas C. Shelton, Charles M. Dalziel, Jr., and Deborrah Sutter Heller, Atlanta, Ga., for defendant.

## ORDER

SHOOB, District Judge.

This is an action for breach of contract. The plaintiff, Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch"), a stock brokerage firm, employed the defendant, Mr. de Liniere, as an account executive in Atlanta. At the beginning of his employment, Mr. de Liniere signed an Account

Executive Trainee Agreement that underlies the present dispute.

The principal provision of that agreement states that:

For a period of one (1) year from the date of termination of my employment with Merrill Lynch for any reason, I will not solicit or cause the execution of the purchase or sale of any common or preferred stock or any corporate or municipal bond through any stock exchange or over-the-counter market by or for any of the clients of Merrill Lynch whom I served while in the employ of Merrill Lynch and who reside within a fifty (50)-mile radius of the Merrill Lynch office at which I was employed, located in Atlanta, Georgia.

On September 16, 1983, Mr. de Liniere left Merrill Lynch to work as an account executive at another firm. Merrill Lynch claims that Mr. de Liniere has been actively soliciting his former clients for their continued business at his new firm.

Before the Court is Merrill Lynch's motion for a temporary restraining order. The Court heard testimony and arguments on September 20 and 22, 1983. Because both parties attended the hearings, filed extensive briefs, and provided evidence by affidavits or live testimony, the Court treats the motion as being for a preliminary injunction. Also before the Court is the defendant's motion to stay the proceedings pending arbitration.

## MOTION FOR PRELIMINARY INJUNCTION

The standard for obtaining injunctive relief is that the movant establish that (1) there is substantial likelihood that it will ultimately prevail on the merits of the claim; (2) it will suffer irreparable injury unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) the public interest will not be harmed if the injunction should issue. *Cate v. Oldham,* 707 F.2d 1176, 1185 (11th Cir.1983). The Court will address the four parts of that standard in turn.

*Substantial Likelihood of Prevailing on the Merits*

The plaintiff will prevail if it can show that the restrictive covenant contained in Mr. de Liniere's contract is valid and applies to his conduct. Because its jurisdiction is founded on diversity of citizenship of the parties, the Court must examine the law of Georgia as it relates to covenants like the one involved here.

If this case had come before this or a Georgia court a decade or more ago, there would have been little question about the validity of the covenant. In *Coffee System of Atlanta v. Fox,* 226 Ga. 593, 176 S.E.2d 71 (1970), the Georgia Supreme Court, in a unanimous opinion, upheld a restrictive covenant in an employment contract as reasonable. In that contract, the employee agreed that

for the term of th[e] agreement and for one (1) year following the termination hereof, he will not, directly or indirectly in any capacity, solicit or accept orders of business located within the area assigned to [him] during any part of the two (2) year period immediately preceding the termination of his employment for any program, service, equipment or product similar to or competitive with the business of company from any organization or individual which or who has been a customer of the company during any part of the two (2) year period immediately preceding termination of his employment, or who or which was actively solicited as a customer by company during the period of this agreement.

*Id.* at 594–5, 176 S.E.2d at 73 (second brackets in original). If *Coffee System* were the latest statement by the Georgia Supreme Court, this Court would have no difficulty in upholding the covenant in Mr. de Liniere's contract.

The most recent expression of the Georgia Supreme Court was last year in *Singer v. Habif, Arogeti & Wynne, P.C.,* 250 Ga. 376, 297 S.E.2d 473 (1982). In that case, the court considered a provision in an employ-

ment contract that restricted the acceptance or solicitation of business from any clients of the employer. The court held that such a restriction was unreasonable because it overprotected the legitimate interests of the former employer and unreasonably affected the defendant. *Id.* at 377, 297 S.E.2d at 475. The court stated:

> [T]he restrictive covenant provides that Singer cannot accept employment from clients of HAW. This provision would prohibit Singer from accepting employment from a client of HAW who comes to him, without any prior solicitation on his part, and requests that he be their accountant. This provision prohibits more than the active solicitation or diversion of clients, and we find that it constitutes an unreasonable restraint of trade as it overprotects HAW's interests and unreasonably impacts on Singer and on the public's ability to choose the professional services it prefers.

*Id.*

■ The language of Mr. de Liniere's contract, in barring his execution of orders from former customers, is parallel to the language of *acceptance* in the contract held offensive in *Singer.* On the other hand, the contract in *Singer* barred solicitation or acceptance of business from *any* client of the employer, whereas Mr. de Liniere's contract restricted his business only with clients whom he had served. The combination of restrictions on *acceptance* of business and of restrictions as to *any* client is clearly unlawful under *Singer.* The language of the opinion suggests, however, that *either* restriction alone is offensive, and the dictum concerning the effect on the public's ability to choose the professional services it prefers directly touches the issue of acceptance, as opposed to solicitation, of business.[1]

The force of *Singer* and its dicta is unclear because of the vote among the justices. The opinion represents a view of only three of the seven justices; three concurred in the judgment only, without stating their opinion, and one dissented without opinion.[2]

In short, the Court is at a loss to determine how the Georgia Supreme Court would rule on the restrictive covenant in this case.[3] That perplexity itself undermines the existence of a substantial likelihood of success on the merits.

### Irreparable Injury to Movant

■ Merrill Lynch has argued that if Mr. de Liniere succeeds in pirating established

---

1. Even if that part of the covenant concerning solicitation was itself inoffensive, and if Mr. de Liniere's activities clearly constituted solicitation, his activities would not be barred by the contract if the part concerning *acceptance* of business was unreasonable: Georgia law is clear that one unreasonable provision in a restrictive covenant will void the entire covenant, and courts will not "blue-line" a covenant to salvage the non-offending parts. *See Richard P. Rita Personnel Services International, Inc. v. Kot,* 229 Ga. 314, 191 S.E.2d 79 (1972).

2. Merrill Lynch argues that *Coffee System* still applies here because a decision of the unanimous Georgia Supreme Court must govern unless overruled by a unanimous Georgia Supreme Court and because *Coffee System* has never been explicitly overruled, much less by a unanimous court. The rule Merrill Lynch proposes did once exist under statute, *see* 1896 Georgia Laws, p. 42, and for a while continued as a practice of the Georgia Supreme Court. *See Ward v. Big Apple Supermarkets of Bolton Road,* 223 Ga. 756, 764, 158 S.E.2d 396, 402 (1967). The Georgia Supreme Court has explicitly noted the demise of that rule, however,

and has refused to follow it. *Hall v. Hopper,* 234 Ga. 625, 630–2, 216 S.E.2d 839, 843 (1975). As a result, this Court looks to the last decision of the Georgia Supreme Court whether or not that decision was unanimous.

3. The Court notes recent expressions of despair regarding the state of the law of restrictive covenants in Georgia. " 'Reasonableness' is the *purported* touchstone of [ ] analysis under the Georgia authorities.... [T]his standard has been rendered hollow and meaningless under the precedent." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Stidham,* 658 F.2d 1098, 1101 (5th Cir.1981) (emphasis in original). "Ten Philadelphia lawyers could not draft an employer-employee restrictive covenant agreement that would pass muster under the recent rulings of this court." *Fuller v. Kolb,* 238 Ga. 602, 605, 234 S.E.2d 517, 518 (1977) (Jordan, J., dissenting). The Court joins in those expressions. The Court finds particularly disturbing the absence of any reference to *Coffee System* in *Singer.*

customers away from Merrill Lynch, that loss of business will irreparably harm Merrill Lynch. The Court finds that any loss of business to Merrill Lynch may be adequately redressed with money damages for breach of contract. The only possibly irreparable result would be some vaguely defined loss of business momentum, but the Court finds that to be unrealistic in the securities field. The real loss is in commission revenue generated by Mr. de Liniere from former Merrill Lynch customers, and that can be readily calculated from the commissions he and his new firm derive from the old Merrill Lynch customers. As a result, there will be no injury to the movant that cannot be remedied later.

### Balance of Harms

■ If an injunction is granted, Mr. de Liniere may be prevented from serving the customers for whom he has worked over the last two years. It would leave him with no client base in a business that thrives on commissions from regular clients. If an injunction were to issue, damage to Mr. de Liniere while he waited ultimately to prevail would be catastrophic as a result of the loss of most of his income. Because the effect of the loss of income pending the outcome of this dispute would, by reason of the differing financial strength of a large brokerage firm and an individual broker, bear far more heavily on Mr. de Liniere than on Merrill Lynch, that disparity of effect supports denial of an injunction.

### Public Interest

■ The Court notes that Merrill Lynch itself has stressed the personal relationship between customer and broker. A stock broker stands in a different relationship to his customers from that of other kinds of salesmen, and fiduciary duties of a broker are recognized in law because of the important role of the broker in protecting the financial welfare of his clients. The "public's ability to choose the professional services it prefers," *Singer,* 250 Ga. at 377, 297 S.E.2d at 475, is central to the consideration of this criterion of injunctive relief. The public

has a greater interest in being able to choose whether to follow its broker to a new firm or to remain at the old firm with a new broker. This is as important, if not more so, in this case with a stock broker than it was in *Singer* with an accountant. The public has little interest in having its choice restricted to brokers *other* than the one who has served them, pending the resolution of this dispute.

Because all four considerations under *Cate v. Oldham* support the denial of a preliminary injunction, the Court DENIES the motion.

### MOTION TO STAY PENDING ARBITRATION

■ Also before the Court is a motion to stay the proceedings pending arbitration. The contract at issue states:

I agree that any controversy between myself and Merrill Lynch arising out of my employment, or the termination of my employment, with Merrill Lynch for any reason whatsoever shall be settled by arbitration at the request of either party in accordance with the Constitution and Rules of the New York Stock Exchange, then in effect.

The defendant has requested arbitration.

Section 3 of title nine, U.S.Code states that:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

The Court believes that the case before it is ideally suited for arbitration under the procedures of the New York Stock Exchange which has had extensive experience

resolving disputes of its members. It is best equipped to determine the liability and damages, if any, arising from the alleged breach of this contract. Accordingly, the Court STAYS further proceedings of this case until completion of arbitration.