UARCO INCORPORATED, Plaintiff,

v.

Gerald EASTLAND, Markee, Inc., and Glenn S. Martin, Defendants.

Civ. A. No. 84–2086.

United States District Court,
D. Kansas.

April 26, 1984.

Joseph J. Kelly, Jr., Curtis E. Woods, Spencer, Fane, Britt & Browne, Kansas City, Mo., Richard H. Hertel, Thomas M. Welsch, Overland Park, Kan., for plaintiff.

David Edward Martin, Independence, Mo., Gregory V. Blume, Overland Park, Kan., for defendants.

## MEMORANDUM AND ORDER

O'CONNOR, Chief Judge.

This matter is presently before the court on plaintiff's request for preliminary injunction. A hearing was held on April 3, 1984. In light of the evidence and the briefs submitted by the parties, the court makes the following findings of fact and conclusions of law.

### Findings of Fact

1. Plaintiff is a corporation with offices nationwide and conducts the business of designing, manufacturing, selling, and distributing standard and custom business forms.

2. Defendant Gerald Eastland was employed by plaintiff as a sales representative, and later as an account representative, from November 1963 to January 26, 1984, on which date he voluntarily resigned from his employment with plaintiff.

3. Defendant Glenn S. Martin was employed by plaintiff as a sales representative, and later as an account representative, from February 1965 to January 26, 1984, on which date he voluntarily resigned from his employment with plaintiff.

4. Defendants Eastland and Martin received training from plaintiff at various times during their employment. This training included business form design, sales strategies, and information on new products. In addition to this training and education, plaintiff provided defendants Eastland and Martin with confidential information concerning plaintiff's customers and customers' business form needs.

5. Plaintiff assigns its sales and account representatives to certain customers, on whom they call to solicit sales of plaintiff's business form products. Each sales and account representative receives a "confidential customer list" containing the names and addresses of those customers he has been assigned to call on. Generally, only one representative calls on a particular customer. The "confidential customer lists" are updated quarterly.

6. While employed by plaintiff, defendants Eastland and Martin each received "confidential customer lists."

7. A close personal relationship is formed between a sales or account representative and each customer assigned to that representative by plaintiff. A relationship of trust and confidence develops between the customer and the representative. The representative works closely with the customer to learn the customer's business form needs and equipment, computer or otherwise, with which the forms will be used. The sales or account representative also keeps the customer supplied with the necessary forms.

8. Defendant Eastland executed a written employment contract with plaintiff on February 1, 1983, in the state of Kansas. (Plaintiff's Exhibit 1.)

9. Defendant Martin executed a written employment contract with plaintiff on January 26, 1980, in the state of Kansas. (Plaintiff's Exhibit 5.)

10. On February 1, 1983, defendant Eastland's base salary was increased in consideration of his execution of the written salesman's agreement on that day. His base salary was increased retroactively to January 1, 1983.

11. The written salesman's agreements executed by defendant Eastland and Martin are identical, and paragraph 9 thereof provides:

9. For a period of two years following the termination of his employment for any reason whatsoever (or if this period shall be unenforceable by law, then for such period as shall be enforceable), Salesman agrees that he will not contact, with a view toward selling any product competitive with any product sold or proposed to be sold by Company at the time of the termination or proposed to be sold by Company at the time of the termination of Salesman's employment, or sell any such product to, any person, firm, association or corporation:

(a) to which Salesman sold any product of Company during the year preceding the termination of Salesman's employment;

(b) which Salesman solicited, contacted, or otherwise dealt with on behalf of Company during the year preceding termination of Salesman's employment;

(c) which is known by Salesman to have been a customer of Company during the year preceding termination of Salesman's employment and which is

located either within the geographical territory served by any District Office of Company to which Salesman was assigned during such year or within the same metropolitan area as any customer named in the Confidential Customer List in effect hereunder as of the date of termination of Salesman's employment.

Salesman agrees that he will not directly or indirectly make any such contact or sale either for the benefit of himself or for the benefit of any other person, firm, association or corporation, and further that he will not in any manner assist any person, firm, association or corporation to make any such contact or sale.

It is on the basis of this paragraph that the plaintiff has commenced the present lawsuit.

12. Since the termination of his employment with plaintiff, defendant Eastland has contacted with the view toward selling, or has sold, products competitive to plaintiff's products to Blue Cross of Kansas City, in his own name and through defendant Markee, Inc.

13. Since the termination of his employment with plaintiff, defendant Martin has contacted with the view toward selling, or has sold, products competitive to plaintiff's products to United Missouri Bank of Kansas City, Traders Bank, and Midwest Data Processing, in his own name and under the name "Control Business Forms."

14. Plaintiff presently services between 2,000 and 2,500 established customer accounts in its Kansas City District.

15. There are over 5,000 other potential customers of business forms in plaintiff's Kansas City district who are not presently serviced by plaintiff.

### Conclusions of Law

Plaintiff seeks relief in the form of a preliminary injunction prohibiting the defendants from breaching the non-competition clause in their contracts with plaintiff.

The standards governing a motion for a preliminary injunction were discussed by the Tenth Circuit Court of Appeals in *Lundgrin v. Claytor,* 619 F.2d 61, 63 (10th Cir.1980), wherein the court stated that the moving party must establish four prerequisites:

(1) Substantial likelihood that the movant will eventually prevail on the merits;

(2) A showing that the movant will suffer irreparable injury unless the injunction issues;

(3) Proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing parties; and

(4) A showing that the injunction, if issued, would not be adverse to the public interest.

(Citations omitted.)

Thus, we can grant the requested injunction only if the plaintiff establishes existence of these four elements.

*Substantial Likelihood of Success on the Merits.*

■ Plaintiff's request for relief is predicated upon the enforceability of the non-competition clause, specifically paragraph 9, subsections (a) and (b), of the 1983 contracts with defendants Martin and Eastland. Kansas law recognizes covenants not to compete between employers and employees. *H & R Block, Inc. v. Lovelace,* 208 Kan. 538, 493 P.2d 205 (1972). The enforceability of such agreements must be determined on a case-by-case basis.

■ A noncompetition clause is valid if it is ancillary to a lawful contract, but it is subject to the test of reasonableness and whether it is inimical to public welfare. *Eastern Distributing Co., Inc. v. Flynn,* 222 Kan. 666, 567 P.2d 1371 (1977). Only legitimate interests may be protected by such a covenant, and it is unreasonable if its real object is merely to avoid ordinary competition. *Id.,* 222 Kan. at 671, 567 P.2d at 1377. In addition, such a clause must be supported by a good consideration. *See Evco Distributing, Inc. v. Brandau,* 6 Kan.App.2d 53, 626 P.2d 1192 (1981).

We note at the outset that Judge Frank G. Theis of this district has previously upheld this very same noncompetition clause. *Uarco Incorporated v. Everett, et al.*, No. 80–1378 (D.Kan., *unpublished*, 7/3/80). In the instant case, the covenant protects a legitimate interest in that plaintiff's business "is one in which the employee is the sole or primary contact with the customers and in which a close personal relationship with them is fostered, enabling the employee to control such business as a personal asset." *Eastern Distributing, supra*, 222 Kan. at 672–73, 567 P.2d at 1377. Thus, the covenant appears to protect legitimate interests of plaintiff.

We also conclude, as did Judge Theis, that the covenant is reasonable. It does not entirely preclude defendants from selling business forms or from competing with plaintiff in the Kansas City area. Defendants are precluded only from contacting or selling those specific customers of plaintiff whom they serviced during 1983. The restriction is effective for only two years from the date of each defendant's resignation.

Defendant presented no evidence that the covenant or its enforcement would be inimical to the public welfare.

Plaintiff presented evidence that with regard to defendant Eastland, the noncompetition clause was supported by a valid consideration, in the form of an increase in his base salary. We conclude that the noncompetition clause in Eastland's contract was supported by a valid consideration.

Although plaintiff presented no evidence concerning the circumstances of Martin's execution of his contract with plaintiff, we conclude that the noncompetition clause in Martin's contract was also supported by a valid consideration. Under Kansas law there is a presumption that consideration is present in all contracts. *See Ferraro v. Fink*, 191 Kan. 53, 379 P.2d 266 (1963); *Evco Distributing, supra*. Defendant Martin presented no evidence to rebut this presumption.

We conclude that plaintiff has demonstrated a substantial likelihood that it will succeed on the merits of its claims against the defendants.

*Irreparable Injury.*

The evidence also demonstrates that without a preliminary injunction, the plaintiff might well suffer irreparable harm. In fact, the evidence suggests that plaintiff may have already suffered irreparable harm by the loss of customers due to solicitations by the defendants and by the loss to plaintiff of the contacts and relationships that defendant Martin and defendant Eastland had with plaintiff's customers.

The evidence also suggests that it is impossible to calculate exactly how much damage the loss of customers and the loss of these relationships will cause to the plaintiff. It is impossible to foresee exactly how much business the plaintiff will lose as a result of competition by defendants Eastland and Martin. We conclude that plaintiff has demonstrated that it would suffer irreparable harm in the absence of a preliminary injunction.

*Balancing the Harm.*

We conclude that this prong of the *Lundgrin* standard also weighs in favor of plaintiff. The harm to the defendants should the injunction issue would be minimal, because the limitations of the noncompetition clauses are only temporary and are limited in scope. Moreover, defendants Martin and Eastland are not precluded from contacting any of the several thousand prospective customers in Kansas City who are not serviced by plaintiff and with whom defendants did not deal on behalf of plaintiff during the year preceding the termination of their employment.

*Public Interest.*

Clearly, the enforcement of valid contracts is in the public interest. The noncompetition clauses in the case now before us appear to be entirely reasonable in scope and, therefore, are not detrimental to the public welfare. We conclude that the issuance of the requested injunction would not be adverse to the public interest.

*Conclusion.*

█ Because the plaintiff has satisfied each of the four requirements for the granting of a preliminary injunction, the plaintiff's request will be granted. We note, however, that the above findings of fact and conclusions of law are made on the basis of the evidence before the court at this stage, and are not in any manner intended to be a final decision on the merits.

IT IS THEREFORE ORDERED that defendants, each of them, and each of their officers, agents, servants, and employees, are hereby restrained and enjoined, for a period from the date hereof to and including January 26, 1986, or until such time as this cause shall be tried on the merits and a final judgment entered thereon, whichever shall first occur, from

    1. contacting, with a view toward selling, any product sold or proposed to be sold by plaintiffs, or selling any such product to any person, firm, association, or corporation

    (a) listed in Appendix A hereto with respect to defendants Eastland and Markee,

    (b) listed in Appendix B hereto with respect to defendant Martin,

    (c) or which defendant Eastland or defendant Martin solicited, contacted, or otherwise dealt with on behalf of plaintiff during the year 1983;

    2. making such contact or sale, directly or indirectly, either for the benefit of himself or for the benefit of any other person, firm, association, or corporation; and

    3. assisting, in any manner, any other person, firm, association, or corporation to make any such contact or sale.

This order shall not prejudice or otherwise preclude plaintiff from hereafter obtaining, upon proper notice and showing, a preliminary injunction with respect to paragraph 9(c) of the respective written employment contracts. IT IS FURTHER ORDERED, pursuant to Rule 65(c) of the Federal Rules of Civil Procedure, that plaintiff post, within ten (10) days of the date of this order, a surety bond in an agreed upon amount.

IT IS FURTHER ORDERED that this preliminary injunction shall remain in effect until January 26, 1986, or until further order of the court.