(726 P.2d 287)
No. 58,372

WICHITA WIRE, INC., and PLAZA TOWEL HOLDER CO., INC., *Appellees,* v. ARLENE LENOX and LENOX MANUFACTURING, INC., *Appellants.*

Opinion filed October 9, 1986.

*F. C. (Rick) Davis II*, of Bruce & Davis, of Wichita, for the appellants.

*Gary L. Ayers* and *Roberta R. Johnson*, of Foulston, Siefkin, Powers & Eberhardt, of Wichita, for the appellees.

Before BRISCOE, P.J., JANICE D. RUSSELL, Associate District Judge, assigned, and JEAN F. SHEPHERD, Associate District Judge, assigned.

BRISCOE, J.: Wichita Wire, Inc., doing business as Plaza Towel Holder Company (Plaza), filed suit against Arlene Lenox and her company Lenox Manufacturing for "Breach of Contract," "Breach of Duty of Good Faith and Fair Dealing," "Interference with Prospective Business Advantage," and "Unfair Competition." As part of its requested relief, Plaza sought and was granted a temporary injunction of six months' duration against Arlene Lenox and Lenox Manufacturing. Arlene Lenox and Lenox Manufacturing appeal after first obtaining a stay of the injunction.

The sole issue raised by this appeal is whether the trial court. erred in issuing the temporary injunction.

Plaza was originally a family owned and operated corporation founded by Arlene Lenox's father in the 1950's. Plaza manufactured and sold towel holders, coat racks, and other items used in the hotel industry. When Wichita Wire purchased Plaza in November 1984, there were four shareholders, each holding 25 percent of Plaza's shares. Each 25 percent interest was purchased for $90,000 for a total purchase price of $360,000.

According to the purchase agreement, each shareholder agreed to consult and advise Wichita Wire during a six-month transition period. Since Plaza's day-to-day activity had been conducted by its shareholders, Wichita Wire also requested each shareholder to sign a noncompetition agreement in exchange for an additional $10,000. Only Arlene Lenox refused to sign the noncompetition agreement.

Shortly after the sale of Plaza, Arlene Lenox formed Lenox

Manufacturing and began to produce a line of products competitive with those produced by Plaza. Arlene Lenox, on behalf of Lenox Manufacturing, solicited business from her former Plaza customers. In December 1984, Plaza's largest customer for a number of years, American Hotel, started doing business with Lenox instead of Plaza. Plaza then filed suit against Arlene Lenox and Lenox Manufacturing. In its petition, Plaza alleged Arlene Lenox had breached the sales contract, breached her duty of good faith, engaged in unfair competition, and interfered with Plaza's prospective business advantage. Plaza requested a permanent injunction and monetary relief, and also moved for a temporary injunction against Arlene Lenox and Lenox Manufacturing until the controversy could be resolved.

A hearing was conducted pursuant to Plaza's motion for a temporary injunction and evidence was presented. At the close of the evidence, the trial court entered a temporary injunction against Arlene Lenox and Lenox Manufacturing which enjoined both from engaging in any business competitive with Plaza for a period of six months. The scope of the temporary injunction is specifically set forth in paragraph 18 of the trial court's order:

"The Court therefore finds and holds that from April 25, 1985, until October 25, 1985, a period of six months, defendants Arlene Lenox and Lenox Manufacturing, Inc., are temporarily enjoined from directly or indirectly competing with Plaza Towel Holder Company, Inc., in the lodging industry by acting as an employee, consultant, owner, partner, or stockholder for any competitor in the manufacture, distribution, or sale of towel and coat holders and racks, robe hooks, towel rings, hat racks or shelves, and or coat or hat hanger bars."

An injunction is an equitable remedy and its grant or denial in each case is governed by principles of equity. *U.S.D. No. 503 v. McKinney,* 236 Kan. 224, Syl. ¶ 1, 689 P.2d 860 (1984). The purpose of a temporary or preliminary injunction is not to determine any controverted right, but to prevent injury to a claimed right pending a final determination of the controversy on its merits. The grant of a temporary injunction would not be proper if it would appear to accomplish the whole object of the suit without bringing the cause or claim to trial. A temporary injunction merely preserves the status quo until a final determination of a controversy can be made. *Comanche County Hospital v. Blue Cross of Kansas, Inc.,* 228 Kan. 364, 366, 613 P.2d 950 (1980); *Evco Distributing, Inc. v. Brandau,* 6 Kan. App. 2d 53, 56, 626 P.2d 1192, *rev. denied* 230 Kan. 817 (1981).

A trial court's decision to grant or deny an injunction is discretionary and will not be disturbed on appeal absent a showing of an abuse of discretion. *Huser v. Duck Creek Watershed Dist. No. 59*, 234 Kan. 1, 5, 668 P.2d 172 (1983). The burden is on an appellant to show that the trial court abused its discretion by issuing the temporary injunction. *Comanche County Hospital v. Blue Cross of Kansas, Inc.*, 228 Kan. at 367.

At the trial level, the burden of proof in an injunction action is upon the movant. *U.S.D. No. 503 v. McKinney*, 236 Kan. at 227. In defining this burden, it has been generally held that the movant must establish a prima facie case showing a reasonable probability that he will ultimately be entitled to the relief sought. The movant has the additional burden of showing a right to the specific injunctive relief sought because irreparable injury will result if the injunction is not granted. *There must be a probable right and a probable danger. Crowther v. Seaborg*, 415 F.2d 437, 439 (10th Cir. 1969). This test has often been expanded into four prerequisites which the moving party seeking a temporary or preliminary injunction must establish:

"(1) substantial likelihood that the movant will eventually prevail on the merits; (2) a showing that the movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing parties; and (4) a showing that the injunction, if issued, would not be adverse to the public interest." *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir. 1980); *Uarco Inc. v. Eastland*, 584 F. Supp. 1259, 1261 (D. Kan. 1984).

While this four-factor analysis has never been expressly applied by Kansas state courts, it appears an appropriate standard. Kansas injunction cases have, in fact, never discussed in detail the standards for analyzing an injunction, although reference is frequently made to the prerequisite of irreparable injury. *U.S.D. No. 504 v. McKinney*, 236 Kan. at 227; *Concerned Citizens, United, Inc. v. Kansas Power & Light Co.*, 215 Kan. 218, 242-43, 523 P.2d 755 (1974), and cases cited therein. The four-factor analysis is well established in the federal courts (*Lundgrin v. Claytor*, 619 F.2d 61; *Wagner Elec. Corp. v. Thomas*, 612 F. Supp. 736, 741 [D. Kan. 1985]; 7 Moore's Federal Practice § 65.04[1] [1986]; 11 Wright & Miller, Federal Practice and Procedure: Civil § 2948 [1973]; 42 Am. Jur. 2d, Injunctions § 285) and was used by the trial court in the present case.

<u>Substantial likelihood of prevailing</u>

First, Plaza presented evidence that Arlene Lenox failed to fulfill her obligations under the purchase agreement. She agreed under the purchase agreement to advise and consult with Plaza's new owners during a six-month transition period. During this period, Plaza requested Arlene Lenox to help them regain American Hotel as a customer. She could offer no assistance in this regard since American Hotel had ceased doing business with Plaza in order to do business with Lenox Manufacturing.

Second, Plaza also presented persuasive evidence that Arlene Lenox violated her duty of good faith, engaged in unfair competition, and interfered in Plaza's business by engaging in conduct which damaged Plaza's goodwill. Since Plaza was purchased as a going concern, the company's goodwill passed to its new owners. See, *e.g., Tobin v. Cody*, 343 Mass. 716, 720, 180 N.E.2d 652 (1962); *Baldwin v. Stuber*, 182 Mont. 501, 597 P.2d 1135 (1979) (both cases recite the rule that goodwill passes by implication in the sale of a business). See Annot., 65 A.L.R.2d 502, 504; 2 McCarthy, *Trademarks and Unfair Competition* § 28:2 (2d ed. 1984). The Kansas Supreme Court has stated that goodwill is property and can be damaged. *Avery v. City of Lyons*, 183 Kan. 611, 621, 331 P.2d 906 (1958).

Plaza argued that once Arlene Lenox had sold the company's goodwill she was precluded from engaging in conduct which would derogate its value. There is some authority for this position:

"Although the sale of the goodwill of a business implies that the buyer will enjoy the former patronage, in the absence of a restrictive agreement, the seller has the right to engage in a rival business. This includes the right to attract trade by any honest method and to deal with any of his former customers who choose to trade with him. The seller cannot, however, directly solicit his old patrons by dissuading them from dealing with his vendee and inducing them to trade with him. Any such implied restriction can only be viable for a reasonable period of time so as to allow customers to attach themselves to the purchaser's business." 2 Callmann, *Unfair Competition, Trademarks and Monopolies* § 16.14 (4th ed. 1982).

Although we find no Kansas case law to support Plaza's argument, the argument has sufficient authority to enable the trial court to consider it for temporary injunction purposes. "It is only necessary that plaintiffs establish a reasonable probability of success, and not an 'overwhelming' likelihood of success, in

order for a preliminary injunction to issue." *Atchison, T. & S.F. Ry. Co. v. Lennen,* 640 F.2d 255, 261 (10th Cir. 1981).

The evidence presented to the trial court strongly suggests that Arlene Lenox's conduct damaged Plaza's goodwill. She contacted Plaza customers and induced them to continue to do business with her and "the old Plaza team." Plaza presented evidence that Arlene Lenox caused confusion about its operation by her correspondence with Plaza customers, by using pictures of Plaza's products in Lenox advertising, and by using Plaza's catalog numbers and pricing lists to sell Lenox products.

"Generally it is recognized that copying or imitating circulars and advertisements is strong evidence of fraud and unfair competition, especially where the advertisement is calculated to deceive the public and pass the goods off as those of another. [Citation omitted.] Where one manufactures a product similar to his former employer's product and sells such goods without distinguishing marks, using similar sales methods and advertisements in order to appropriate his good will, a charge of unfair competition has been sustained." *Parsons Mobile Products, Inc. v. Remmert,* 216 Kan. 256, 261, 531 P.2d 428 (1975).

Taken as a whole, the evidence and authority presented provides support for the trial court's conclusion that Plaza had shown a likelihood to succeed in the merits. We remind the parties that our findings and conclusions regarding this requirement are made on the basis of the record generated at the temporary injunction hearing and are not in any manner intended as a final decision on the merits.

Irreparable injury

Plaza's only evidence of irreparable injury was the testimony of Plaza's president that the damage done to Plaza's goodwill could not be calculated. This statement is not persuasive. First, most of the alleged damage to Plaza's goodwill, the loss of American Hotel as a customer, had already occurred. A temporary injunction cannot be used to remedy past injury. *State ex rel. Stephan v. Pepsi-Cola Gen'l Bottlers, Inc.,* 232 Kan. 843, 844-45, 659 P.2d 213 (1983). Second, the damage caused by its loss of established business customers is insufficient to establish irreparable injury because it is easily calculated by determining the amount of business Lenox conducted with former Plaza customers. See *Merrill Lynch, Pierce, Fenner & Smith v. de Liniere,* 572 F. Supp. 246 (N.D. Ga. 1983). In *Merrill Lynch,* a former employee began selling securities for another firm. Merrill

Lynch sued its former employee for breaching his agreement not to solicit business from Merrill Lynch clients for a one-year period. On the issue of irreparable harm, the federal district court held:

"that any loss of business to Merrill Lynch may be adequately redressed with money damages for breach of contract. The only possibly irreparable result would be some vaguely defined loss of business momentum, but the Court finds that to be unrealistic in the securities field. The real loss is in commission revenue generated by Mr. de Liniere from former Merrill Lynch customers, and that can be readily calculated from the commissions he and his new firm derive from the old Merrill Lynch customers. As a result, there will be no injury to the movant that cannot be remedied later." 572 F. Supp. at 249.

In response to *Merrill Lynch*, Plaza cites *Uarco Inc. v. Eastland*, 584 F. Supp. 1259. Uarco brought an action against two of its former sales representatives to enforce a noncompetition clause. Uarco is a corporation with offices nationwide and conducts the business of designing, manufacturing, selling, and distributing business forms. The noncompetition clause precluded salesmen who signed the agreement from contacting or selling to Uarco customers for a period of two years after leaving the corporation. In *Uarco*, the court concluded:

"The evidence also demonstrates that without a preliminary injunction, the plaintiff might well suffer irreparable harm. In fact, the evidence suggests that plaintiff may have already suffered irreparable harm by the loss of customers due to solicitations by the defendants and by the loss to plaintiff of the contacts and relationships . . . with plaintiff's customers." 584 F. Supp. at 1262.

The court in *Uarco* failed to set forth what evidence it considered or why it believed the damage could not be calculated. For this reason, we adopt the better reasoned analysis in *Merrill Lynch* and conclude loss of identifiable customers, who had generated a known dollar amount of business, is a calculable injury which is insufficient to establish irreparable harm justifying the entry of a temporary injunction. Where there is a full, complete, and adequate remedy at law through recovery of calculable money damages, the injury is not irreparable and equity will not apply the extraordinary remedy of injunction. 42 Am. Jur. 2d, Injunctions § 49. In the present case, Plaza offered no rationale to support its opinion that the injury caused by Lenox could not be calculated. Furthermore, by the trial court staying the temporary injunction on June 17, 1985, any arguable irreparable harm to Plaza that might have been prevented has

already occurred and will not be corrected by our now giving effect to the temporary injunction.

## Threatened injury outweighed damage

At trial Arlene Lenox testified that, if her company lost American Hotel as a customer, Lenox would go out of business. Arlene Lenox stated that in the first three months of business, Lenox Manufacturing had net sales of $11,100 and of that amount $8,700 was with American Hotel. Plaza, on the other hand, offered no evidence that it would be unable to continue in business without American Hotel as a customer.

## Adverse to public interest

While there was no specific evidence presented concerning this factor, the trial court concluded that the irreparable harm to Plaza outweighed the potential harm, if any, to the public. This conclusion appears sound as there was never any suggestion that the public interest would be affected by the outcome of the case, much less that it would be affected adversely. We do not have here the public interest in the enforcement of valid contracts as recognized in *Uarco* because, unlike the salesmen in *Uarco*, Arlene Lenox did not sign a noncompetition agreement.

We conclude that the trial court's issuance of the temporary injunction against Arlene Lenox and Lenox Manufacturing was an abuse of discretion. Although Plaza did establish a likelihood of success when this case is tried on its merits and no adverse effect to public interest, there was no showing that Plaza would suffer any irreparable harm should the injunction not be granted or that the threatened harm to Plaza should the injunction not issue outweighed the harm to Lenox if it did issue. Further, even if we were to conclude Plaza had carried its burden of proof to establish entitlement to an injunction, the injunction entered here was too broad and therefore improper. An injunction should be no broader than the occasion shown requires. *Wyoming v. Colorado*, 286 U.S. 494, 508, 76 L. Ed. 1245, 52 S. Ct. 621 (1932). Here, the trial court enjoined Arlene Lenox and Lenox Manufacturing from engaging in competition with Plaza for six months. Arlene Lenox did not sign a noncompetition agreement and therefore the trial court had no authority for completely enjoining her rival business. At most, the trial court should only have enjoined Arlene Lenox and Lenox Manufacturing from

engaging in unfair competition, or perhaps restricted her from soliciting Plaza customers.

The trial court's order entering a temporary injunction against Arlene Lenox and Lenox Manufacturing is reversed.