No. 61,283

MARION W. CROW, *et al., Appellants*, v. BOARD OF COUNTY COMMISSIONERS OF SHAWNEE COUNTY, KANSAS, *Appellees.*

(755 P.2d 545)

Opinion filed June 3, 1988.

*Marion W. Crow,* of Topeka, appeared pro se and was on the brief.

*Douglas F. Martin,* county counselor, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

HERD, J.: This is a tax case wherein Marion Crow challenges the use of funds by the Board of County Commissioners of Shawnee County for the Kansas Expocentre. The county cross-appeals for an award of attorney fees and costs on the theory Crow's appeal is frivolous.

In 1983 the Board of County Commissioners of Shawnee County passed Resolution No. 83-33, which is set out below:

"A resolution authorizing and directing the calling of a question submitted election to be held at the time of the general election on April 5, 1983, in Shawnee County, Kansas, for the purpose of submitting to the qualified electors of said county a proposition to issue general obligation bonds of said county in the aggregate principal amount of not exceeding $19,700,000, for the purpose of providing funds to construct on the Shawnee County fairgrounds a civic center complex consisting of buildings and parking facilities and to remodel and equip certain existing public buildings, together with all things necessary and incidental thereto, under the authority of K.S.A. 19-15,139 et seq., K.S.A. 19-15,114 et seq. and Article 1 of Chapter 10 of the Kansas statutes annotated and all amendments thereto."

The proposed civic center excited much discussion in Shawnee County. Newspaper articles informed the public that if the proposal passed, the civic center would be built under a state

statute that specifically applies to building civic centers, K.S.A. 19-15,139 *et seq.*, and would be county operated.

The proposal hit a snag when it was discovered the statute did not authorize the use of bond proceeds for the renovation and repair of existing structures, as required by the plan for the Kansas Expocentre. The problem was overcome by special legislation authorizing Shawnee County· to finance repairs and reconstruction with money from the bond issue. K.S.A. 1987 Supp. 19-15,139.

A report by a civic center marketing and management consultant was reported in newspapers as stating the first years of operating the Expocentre might require subsidies from government funds, with the amount of support decreasing as "event days" increased. Suggestions on ways to hold down taxes on the center were discussed.

The bond proposal was submitted to the voters on April 5, 1983, as follows:

"SHALL THE FOLLOWING BE ADOPTED?

"Shall Shawnee County, Kansas issue and sell its General Obligation Bonds in the aggregate principal amount of not exceeding Nineteen Million Seven Hundred Thousand Dollars ($19,700,000) for the purpose of providing funds to construct on the Shawnee County Fairgrounds a civic center complex consisting of buildings and parking facilities and to remodel and equip certain existing public buildings, together with all things necessary and incidental thereto, under the authority of K.S.A. 19-15,139 et seq., 19-15,114 et seq., all as amended, and Article One of Chapter 10 of the Kansas Statutes Annotated and all amendments thereto?"

The proposal was approved by a 2-1 majority. Opponents of the proposition argued the center would not only increase property taxes because of the bond issuance but would also require a tax levy for operating expenses because it would be several years before the center would be self-sufficient.

It was accepted that the county had the authority to pay operating expenses for the center when needed. Receipts from the 1985 general fund tax levy were thus used to pay for operating and equipping of the Expocentre.

Crow objected to the use of the general fund by protesting his 1985 taxes with the State Board of Tax Appeals. Although he raised other issues, Crow's main argument was that the county did not have authority to pay for Expocentre operating costs and

equipment from any source other than the bond issue unless a special statute authorized the county to pay operating expenses from general funds.

The first issue for our determination is whether Crow has standing to challenge alleged unlawful expenditure of county funds. The longstanding general rule in Kansas is that a taxpayer may not challenge the expenditure of county funds unless he is peculiarly damaged by the county's actions. *Robinson v. Board of County Commissioners*, 210 Kan. 684, 687, 504 P.2d 263 (1972).

Crow does not claim to be affected differently than any other member of the general public by the county's actions. A private citizen may nevertheless be granted standing by statute. *Haines v. Rural High School Dist. No. 3*, 171 Kan. 271, 274, 232 P.2d 437 (1951). Crow made his protest to the Board of Tax Appeals under the provisions of K.S.A. 1987 Supp. 79-2005, which sets forth the procedure by which a citizen may protest his payment of taxes.

Under this statute, the taxes must be paid before a protest may be filed with the county treasurer. See K.S.A. 1987 Supp. 79-2005(a); *In re Tax Protest of Rice*, 228 Kan. 600, 620 P.2d 312 (1980). The protest must state the grounds on which the taxpayer protests payment. Within thirty days after filing the protest, the taxpayer must file an application for refund with the State Board of Tax Appeals. The Board then sets a date for a hearing.

The Board denied Crow's motion for relief and his motion for rehearing, whereupon he appealed to the district court. The district court denied the appeal, and Crow again appealed. The case is reviewable by this court as in other civil cases. K.S.A. 77-623.

K.S.A. 1987 Supp. 79-2005 is intended to provide a means of relief to those taxpayers who believe a tax levy or assessment is illegal. See K.S.A. 1987 Supp. 79-2005(b) and (c). Crow presents no evidence the general fund tax levy is illegal. Instead, he protests the county's *use* of the general fund. The district court, noting the severity of the laws proscribing improper diversion of funds and their enforcement by designated public prosecutors, found the legislature did not intend to "designate each taxpayer via K.S.A. 79-2005 . . . as a private attorney general to vindicate the public interest in proper *expenditure* of tax funds absent

circumstances legally jeopardizing the levy itself." The court noted if the diversion amounted to fraud, the levy itself might be illegal, in which case a tax protest remedy might be found appropriate.

In *Baker v. Consolidated Rural H.S. Dist.*, 143 Kan. 695, 56 P.2d 109 (1936), a newly consolidated school district certified to the Board of County Commissioners · a tax levy on property situated in only one of the former districts in order to pay teacher salaries this court had determined were owed by the consolidated district. We held the levy amounted to fraud and was properly protested by individual taxpayers. The district court held the circumstances in the case at bar are in no way similar.

We agree with the district court. There is no evidence of fraud or an illegal tax levy. Crow's objection is to the use of tax funds. Absent a showing he was injured differently than other members of the public, Crow has no standing to raise the issue.

It is obvious Crow's major argument on appeal would have failed on the merits. The county has clear authority under K.S.A. 19-212, 19-229 and 19-241 to determine how its general fund shall be used in meeting county expenses, including the operation and maintenance of public buildings. The County Commissioners have exclusive control over county expenditures. See *Hackler v. Board of County Commissioners*, 189 Kan. 697, 369 P.2d 782 (1962).

Crow's remedy, if any, is in the political arena rather than the courts as Crow has no standing to bring this appeal. Thus, the issues on appeal are moot and require no further discussion. We have considered the county's cross-appeal for costs and attorney fees and deny the request.

The judgment of the district court is affirmed.