No. 89,029

GENERAL BUILDING CONTRACTORS, L.L.C. and ROBERT D. TOLBERT, *Appellants*, v. BOARD OF SHAWNEE COUNTY COMMISSIONERS OF SHAWNEE COUNTY, KANSAS, *Appellee.*

66 P.3d 873

Opinion filed April 18, 2003.

*James S. Willard*, of Scott, Quinlan, Willard & Barnes, L.L.C., of Topeka, argued the cause and was on the brief for appellants.

*James M. Crowl*, assistant county counselor, argued the cause, and *Richard V. Eckert*, county counselor, was with him on the brief for appellee.

The opinion of the court was delivered by

LARSON, J.: This is a landowner appeal from the denial of injunctive relief where the ultimate first impression issue is whether a Kansas county has the power under home rule to exercise eminent domain rights and condemn land for purposes of industrial or economic development.

Numerous issues are raised. We elect to reach the ultimate issues despite possible mootness and hold (1) Shawnee County has the power of eminent domain under home rule and related statutes, (2) such power of eminent domain is to be exercised by resolution rather than motion, (3) the taking of private property for

industrial and economic development is a valid public purpose, and (4) none of the four prerequisites of *Wichita Wire, Inc. v. Lenox*, 11 Kan. App. 2d 459, 462, 726 P.2d 287 (1986), for the granting of temporary or preliminary injunctions were met, and the trial court correctly denied the requested injunction.

*Facts and Procedural Background*

The facts leading up to the instant appeal are not in dispute, and we set them forth in considerable detail as they drive the result we reach.

In November 2000, Shawnee County voters approved a one-quarter of one cent sales tax to be used for economic development. After this approval, an economic development specialist, Doug Kinsinger, was hired as director of the nonprofit corporation, Growth Organization of Topeka/Shawnee County, Inc. (GO Topeka).

The City of Topeka and Shawnee County entered into an interlocal agreement as allowed by K.S.A. 12-2901 *et seq.*, relating to financing countywide infrastructure development and economic development to be funded by the voted sales tax revenue. This agreement created a Joint Economic Development Organization (JEDO) comprised of leaders from the City of Topeka and Shawnee County. JEDO has the authority to own and hold real property, but any property so held by JEDO at its termination would revert jointly to the county and city. JEDO commissioned a market target survey which indicated Topeka/Shawnee County lacked a site with significant contiguous acreage suitable for industrial development.

Several groups with economic development expertise were hired to review the availability and suitability of potential industrial development sites. Both groups highly recommended the land between 49th and 57th Streets and between U.S. Highway 75 bypass and Topeka Boulevard. Efforts began to acquire this property for the industrial development site.

Representatives of JEDO successfully acquired options for nine parcels of real property. At the same time, negotiations were underway for a major commercial tenant to utilize the property. On March 14, 2002, Kinsinger approached the Board of County Com-

missioners of Shawnee County, Kansas (Board), and requested it consider acquisition of the remaining parcels through eminent domain because only a small portion of the acreage remained to be acquired and time was of the essence in the negotiations for usage of the property.

The Board was told that three parcels amounting to approximately 7 acres were needed to complete the project. A motion was made, seconded, and carried 3-0 to authorize the county counselor's office to begin eminent domain proceedings to obtain the final three parcels of land.

On March 19, 2002, the county filed a petition for eminent domain pursuant to K.S.A. 26-501 *et seq.*, in Shawnee County District Court, seeking to acquire the real property owned by three parties which included General Building Contractors, L.L.C. (GBC) and Robert D. Tolbert. The county invoked its home rule powers under K.S.A. 19-101 *et seq.*, with the stated purpose of establishing an industrial park to attract economic development within Shawnee County.

On March 29, 2002, GBC and Tolbert filed a separate injunction action pursuant to K.S.A. 60-901 *et seq.*, seeking a temporary restraining order prohibiting the county from going forward with eminent domain proceedings and a permanent injunction prohibiting the county from taking their properties by eminent domain. Shortly thereafter, they moved to consolidate the injunction action with the eminent domain proceeding and requested an immediate hearing. The trial judge joined the two actions and conducted an evidentiary hearing on the injunction action on April 17, 2002. Numerous exhibits were stipulated, and it was also agreed that the subject property of eminent domain action would ultimately be transferred to a private entity to be used in a private enterprise.

Tolbert testified on his own behalf and as a managing member of GBC. Together they owned five lots located within Thompson Industrial Park zoned for industrial use. The lots all abut 57th Street and have street improvements and sewer and utility service. The acreage was purchased in December 2000, and GBC completed a building on lot 10 in October 2001.

Kinsinger testified on behalf of the county stating GO Topeka was in the process of acquiring all of the site for the purpose of creating jobs and enhancing the tax base by attracting a large private employer. He said the options to purchase in the target area consisted of approximately 400 acres except for the lots owned by GBC and Tolbert. He stated that if the options were exercised, title would initially go to Shawnee County, but eventually the land would be sold to private companies at a later date.

Kinsinger explained the recommendations of consultants, and in response to a question from the court indicated that while GBC would be a supplier or vendor to a company that sells a product or service outside the county's traditional market area, what was wanted were employers who import new dollars and employment and provide a new demand for service. He indicated the GBC property was located where foundations of a new building could be expected and major employers would require control of adjoining property.

Kinsinger testified that, in his experience, the types of public benefits created by the kind of industrial park envisioned included "[t]housands of jobs, increased payroll, increased standard of living, opportunities for many people in the community, plus [a] greatly enhanced tax [base]."

Shawnee County Commissioner Miller also testified that the public purpose served by taking the action was the creation of high paying jobs and expansion of the tax base of the community, as well as its overall economic health.

The district court received briefs and on April 26, 2002, issued its memorandum decision and order as a final judgment concerning the injunction issue.

The district court found no merit in GBC and Tolbert's contention that the petition for eminent domain filed by Shawnee County was defective because of lack of statutory authority. The court held that K.S.A. 19-101, K.S.A. 19-3801 *et seq.*, and K.S.A. 19-4101 *et seq.*, considered *in pari materia*, provided authority for Shawnee County's eminent domain action under its home rule powers. The district court found that GBC and Tolbert failed to provide any evidence they would sustain any injury other than money damages

for the value of the properties in question and did not show that the Board's planned use of the properties would not benefit the public interest. Further, the court took notice "that there would be substantial damage to [the Board's] efforts at economic development if the proposed injunction were granted." The court held K.S.A. 26-501 *et seq.* did not unconstitutionally deprive GBC and Tolbert due process of law. The court examined each of the prerequisites for an injunction of *Wichita Wire*, 11 Kan. App. 2d 459, and found plaintiffs had failed to meet their burden of proof of any of the factors, with the absence of any one factor alone being fatal to their case. The petition for an injunction was denied.

The Shawnee County Commissioners by Home Rule Resolution No. HR 2002-4 on April 25, 2002, resolved to exercise the power of eminent domain when necessary in the public interest for lawful purposes including economic development. This resolution further ratified their intent "on March 14, 2002, to resolve to exercise its home rule power and initiate eminent domain proceedings to acquire property for an industrial park and to promote economic development within Shawnee County." This resolution was published on May 1, 2002.

The appraiser's report in the condemnation action was filed April 26, 2002, finding compensation for GBC of $269,000 and $60,000 for Tolbert. GBC and Tolbert filed their notice of appeal from the district court's injunction order on May 22, 2002. They also filed their appeal from the appraiser's award the same day.

On May 24, 2002, Shawnee County paid the amount of the appraiser's award totaling $329,000 into the clerk of the district court. This amount was ordered withdrawn as allowed by K.S.A. 26-510 on June 18, 2002, without prejudice to GBC and Tolbert's right of appeal.

A motion to expedite the appeal was granted on July 30, 2002. Shawnee County's motion to take judicial notice that Target Corporation had announced in June 2002 that it would construct a distribution center on part of the property subject to this appeal and that the GBC building had been removed from the property in question was denied by the Court of Appeals on September 3,

2002. This appeal was transferred to the Supreme Court pursuant to K.S.A. 20-3018(c).

*Mootness and Change of Circumstances*

The county last argued in its brief that because of the change in circumstances resulting from the demolition of GBC's building and construction of the Target Distribution Center, coupled with the landowners' withdrawal of the appraiser's award, the request for injunctive relief is now moot. See *State ex rel. Stephan v. Johnson*, 248 Kan. 286, Syl. ¶ 1, 807 P.2d 664 (1991); *Mills v. McCarty*, 206 Kan. 93, Syl. ¶ 3, 476 P.2d 691 (1970).

The county further points to our recent case of *City of Wichita v. Meyer*, 262 Kan. 534, 549, 939 P.2d 926 (1997), where we reversed a district court order to restore the property to its landowner and remove an ice rink that had been constructed thereon because the "status quo has been irretrievably altered."

GBC and Tolbert did not file a reply brief but on oral argument contend their property should be reconveyed to them, you can never consent to a void proceeding, and because the legislature never gave the county the specific power of eminent domain for economic development purposes no right of eminent domain exists in this case. Based on these arguments, they contend the issues they raise are not moot.

We will not here review our long-time rules where we have held that it is the duty of courts to decide actual controversies by a judgment that can be carried into effect and not to give opinions upon moot questions or abstract propositions. We will briefly look to several cases where the validity of eminent domain actions were challenged by injunction or in other ways. In *Thompson v. Kansas City Power & Light Co.*, 208 Kan. 869, 871-73, 494 P.2d 1092, *cert. denied* 409 U.S. 944 (1972), landowners attempted by declaratory judgment to attack a condemnation proceeding. The matter was dismissed as moot because the electric line in issue had been built and in operation for over a year.

A similar case with a different result was *McGinnis v. Kansas City Power & Light Co.*, 231 Kan. 672, 647 P.2d 1313 (1982). Here, KCPL condemned McGinnis' easement rights and had paid

an award into court. McGinnis filed an injunction action asserting that KCPL failed to obtain a siting permit from the Kansas Corporation Commission before beginning condemnation proceedings as required by statute. This court stated:

"[KCPL] argues that, since [it] had paid the award into court, the condemnation had become an accomplished fact and, thus, an action to enjoin a completed condemnation action is moot. We, likewise, find no merit to this contention. Under the Kansas Siting Act, compliance with the act was a prerequisite to both condemnation and entry upon the land. It is important to note that this action challenges the *legal authority* of the condemning authority, KCPL, to take plaintiff's property by eminent domain. Kansas courts have entertained injunction actions challenging the extent or validity of an eminent domain proceeding many years subsequent to the conclusion of the condemnation action. See for example *Spears v. Kansas City Power & Light Co.*, 203 Kan. 520, 455 P.2d 496 (1969). The law is clear that the only way a landowner may attack the right of a public utility to exercise the power of eminent domain is for a landowner to bring an independent action, usually by suit for injunction. [Citation omitted.]" 231 Kan. at 678-79.

Justice Prager's opinion continued:

"Moreover, we think it important here that KCPL has appealed the award granted in the condemnation proceeding and that plaintiff has not withdrawn the award from the district court. Thus, the action is pending and there has been no final determination made in the eminent domain case." 231 Kan. at 679.

The injunction as granted by the district court was affirmed on appeal in the *McGinnis* case, and KCPL was enjoined from entering upon the landowner's land until it had obtained the necessary permits to do so.

We do not think it is critical in our case that GBC and Tolbert have withdrawn the awards while continuing their appeal of the appraiser's award. The clear language of K.S.A. 26-510(b) allows them to do so "without prejudice to their right of appeal," and this language should likewise apply to their appeal in the injunction action.

Although mootness was not in issue, an important earlier case involving the exercise of the rights of eminent domain by an electric utility to acquire land for production of electric power is *Concerned Citizens, United, Inc. v. Kansas Power & Light Co.*, 215 Kan. 218, 523 P.2d 755 (1974). In this case, the injunction action proceeded

separately from the condemnation proceedings as in our case but an appeal affirmed denial of the injunction and held it was proper for the condemning authority to consider future demands which may reasonably be anticipated. With irreparable injury not being shown the ultimate holding was that the injunction was properly denied. Syl. ¶ 12 states: "To warrant injunctive relief it must clearly appear that some act has been done, or is threatened, which will produce irreparable injury to the party seeking such relief." 215 at 219.

While the county's reliance on *Meyer*, 262 Kan. 534, is justified in its argument against an injunction being granted, we point out the landowners there were not contesting the city's eminent domain power, only that they had not been properly joined in the proceedings. The landowners were not requesting demolition of the structure, but only that the eminent domain statutes be followed.

There is certainly logic for a finding of mootness, that only an advisory opinion will be rendered, and the issuing of an injunction by appellate decision is not appropriate under the facts of this case. On the contrary, landowners have clearly raised the question of the county's power to exercise eminent domain proceedings to acquire property for industrial and economic development. This appears to be a matter of considerable public interest in light of the desire for increase in tax base, additional employment, and expanded business and industrial action. We have said:

" 'An exception to the general rule regarding whether a case is moot exists if the case involves a question of public interest. Appellate courts are inclined to retain an appeal on this basis if the question involves one that is likely to arise frequently in the future unless it is settled by a court of last resort.' " *Junction City Education Ass'n v. U.S.D. No. 475*, 264 Kan. 212, 215, 955 P.2d 1266 (1998).

An example of this exception is *Stauffer Communications, Inc. v. Mitchell*, 246 Kan. 492, 494, 789 P.2d 1153 (1990), where the hearings a reporter sought to attend had ended by the time the case was considered an appeal. The parties and the court agreed the situation would recur and continue to evade appellate review. We properly refused to dismiss the appeal as moot.

Questions concerning the power of a county to exercise the right of eminent domain are likely to recur throughout the state and evade review. We elect to answer the issues raised by GBC and Tolbert for the assistance of counties and landowners in the future. See *Roe v. Wade*, 410 U.S. 113, 125, 35 L. Ed. 2d 147, 93 S. Ct. 705 (1973).

We reach and will consider all of GBC and Tolbert's contentions, although we answer each contrary to their arguments.

*May counties exercise the power of eminent domain to take property for use in economic development?*

The provisions of statutes are central to this issue, and our standard of review is as follows:

"Interpretation of a statute is a question of law over which an appellate court's review is unlimited. [Citation omitted.] In construing statutes and determining legislative intent, several provisions of an act, *in pari materia*, must be construed together with a view of reconciling and bringing them into workable harmony, if possible. [Citation omitted.]" *Anderson v. Bruce*, 274 Kan. 37, 39, 50 P.3d 1 (2002).

GBC and Tolbert argue there is no inherent home rule power of eminent domain. They contend that unless the legislature expressly grants the power of eminent domain to counties, counties may not exercise this power. GBC and Tolbert maintain because cities in Kansas also enjoy home rule powers but derive their powers of eminent domain, not through the home rule statute, but rather under K.S.A. 26-201, this court cannot assume that the legislature intended to give counties the power of eminent domain through the county home rule statute alone.

The county contends it possesses the power of eminent domain through its home rule authority and that it may lawfully exercise such powers to acquire property for economic development and creation of industrial sites. The county relies on K.S.A. 19-101; K.S.A. 2001 Supp. 19-101a; K.S.A. 19-101b; K.S.A. 19-101c; K.S.A. 19-4101 *et seq.*; K.S.A. 19-3801 *et seq.*; K.S.A. 12-2904a(a)(2); Heim, Kansas Local Government Law § 3.01 (2d ed. 2001); and Attorney General Opinions Nos. 85-52 and 86-40. The county argues the legislature granted home rule powers to counties in 1974

and in doing so erased what has been referred to as Dillon's Rule (local governments may exercise only those powers specifically granted by state legislature). The county characterizes the landowners' argument as an implied preemption argument that should be rejected by this court.

Before reciting the applicable statutes, we first set forth our agreement with the county's contentions that all of the court decisions prior to 1974 which are relied on by landowners are no longer valid authority. The previous concept of requiring counties to rely on the state legislature for power to act was abolished by the home rule statutes which were enacted in 1974 to apply to Kansas counties. As is stated in Heim, Kansas Local Government Law § 3.01, p. 3-1: "Home rule, in effect reverses Dillon's Rule because a local unit of government may exercise power over its own affairs despite the lack of statutory authority."

This then leads us to the issue of the existence of eminent domain power under home rule statutes.

K.S.A. 19-101 provides:

"That each organized county within this state shall be a body corporate and politic, and as such shall be empowered for the following purposes: . . . *fifth*, to exercise the powers of home rule to determine their local affairs and government authorized under the provisions of K.S.A. 19-101a; *sixth*, to exercise such other and further powers as may be especially conferred by law."

K.S.A. 2001 Supp. 19-101a(a) states that "[t]he board of county commissioners may transact all county business and perform all powers of local legislation and administration it deems appropriate, subject only to the following limitations, restrictions or prohibitions . . . ." While there is no express grant of home rule power to counties to acquire property through eminent domain, none of the 32 subparagraphs of 19-101a expressly prohibits or restricts a county's use of the power of eminent domain. See K.S.A. 2001 Supp. 19-101a(a) (1)-(32).

Later applicable to one of the arguments made herein, K.S.A. 2001 Supp. 19-101a(b) and (c) states:

"(b) Counties shall apply the powers of local legislation granted in subsection (a) by resolution of the board of county commissioners. If no statutory authority exists for such local legislation other than that set forth in subsection (a) and the

local legislation proposed under the authority of such subsection is not contrary to any act of the legislature, such local legislation shall become effective upon passage of a resolution of the board and publication in the official county newspaper. If the legislation proposed by the board under authority of subsection (a) is contrary to an act of the legislature which is applicable to the particular county but not uniformly applicable to all counties, such legislation shall become effective by passage of a charter resolution in the manner provided in K.S.A. 19-101b, and amendments thereto.

"(c) Any resolution adopted by a county which conflicts with the restrictions in subsection (a) is null and void."

Further, K.S.A. 19-101c teaches that "[t]he powers granted counties pursuant to this act shall be referred to as county home rule powers and they shall be liberally construed for the purpose of giving to counties the largest measure of self-government."

K.S.A. 19-3801 *et seq.* deals with the establishment of industrial districts, and K.S.A. 19-4101 *et seq.* relates to economic development programs. These provisions are generally applicable but need not be set forth in detail. K.S.A. 12-2904a(a)(2) allows any entity created under an interlocal agreement "to take and hold any property, real or personal, in fee simple or otherwise."

Heim, Kansas Local Government Law § 3.01, p. 3-1, clearly states that counties have the power of eminent domain. This authority opines:

"[c]ounties have enjoyed statutory home rule powers since 1974.

"The powers exercised by local governments, regardless of source, may be classified into several general categories. The broadest classification is that of the police power. Nearly all local governments are authorized by state statute to exercise some aspect of the police power. Other broad classifications include the power to tax, *to exercise the right of eminent domain* and to enter into contracts." (Emphasis added.)

Attorney General Opinion No. 85-52 states in its synopsis:

"The acquisition and development of real property as an industrial site or park is a legitimate exercise of a county's power of local legislation or home rule as provided in K.S.A. 19-101 and K.S.A. 1984 Supp. 19-101a, as amended by 1985 Senate Bill No. 326. County funds acquired pursuant to K.S.A. 19-4101 *et seq.*, may only be utilized for programs relating to economic development."

The wording of the synopsis in Attorney General Opinion No. 86-40 more specifically states:

"K.S.A. 19-4103 authorizes expenditure of county moneys for programs related to economic development. The buying and selling of real estate for industrial sites is a legitimate exercise of a county's power of home rule as provided in K.S.A. 19-101 and K.S.A. 1985 Supp. 19-101a. Thus, a county which has established an economic development program under K.S.A. 19-1401 *et seq.* may engage in the buying and selling of real estate for industrial sites for economic development, as long as said expenditure: (1) has a demonstrable relationship to the program, and (2) satisfies the public purpose doctrine. Similarly, a county may award cash grants to industries as inducements to locate in a particular county, as long as the expenditure meets both of the above-mentioned requirements. Finally, a county may exercise the power of eminent domain to acquire lands for industrial sites, insofar as this power is authorized expressly by K.S.A. 19-3801 or by implication through home rule and K.S.A. 19-4103."

This opinion also mirrors Heim's observation that Kansas case law prior to 1974 is no longer persuasive because of the advent of county home rule.

While we are not bound by the conclusions of attorney general opinions, we find in this instance both 85-52 and 86-40 to be persuasive.

The directions of K.S.A. 19-101c are clear. We are to liberally construe home rule powers to give counties the largest measure of self-government. To adopt the landowners' arguments would be directly contrary to this direction.

We further discount the landowners' argument of "implied preemption" as the result of isolated statutes being passed concerning eminent domain. These acts evidence no intent of precluding the county from exercising the general powers of eminent domain which it possesses under the home rule and other applicable statutes.

We agree with the analysis and result reached by the district court and hold that counties have and may exercise the power of eminent domain to acquire property for industrial or economic development purposes.

*Did Shawnee County lawfully exercise its power of eminent domain?*

GBC and Tolbert next assert that the county failed to follow the proper procedure in authorizing the eminent domain proceedings. They assert that because the county first proceeded by motion

rather than by resolution and publication, the proceedings must fail. While we agree with GBC and Tolbert's initial premise, we do not agree with their conclusion and hold the enactment of a resolution and its publication prior to the taking of the property ratified the earlier actions and fail to affect the substantial rights of the parties so as to render the eminent domain proceedings invalid.

The factual statement we have previously set forth clearly shows the initial action on March 14, 2002, was taken by motion and not a formal resolution. Testimony of Commissioner Miller was that the official agenda of this meeting was published in accordance with the Open Meetings Act.

The county argues the provisions of K.S.A. 19-101a(b) refer to the enactment of local legislation, not the use of the inherent power of eminent domain. However, the county acknowledges that after it commenced the condemnation action, the Shawnee County Commissioners on April 25, 2002, adopted Home Rule Resolution HR 2002-4, authorizing the county to use its power of eminent domain to acquire property for any lawful purpose, including economic development. The resolution also specifically ratified the actions previously began by the March 14, 2002, motion. This resolution was properly published as we have previous stated herein. The Board argues that even if it committed a procedural defect, K.S.A. 26-502 provides that any such defect must substantially impair the rights of GBC and Tolbert in order to invalidate the proceedings.

The district court concluded that "none of the other [procedural] defects that Plaintiffs allege with regard to the County's petition, assumed *arguendo* to be true, would rise to the level of affecting any substantial rights of the Plaintiffs so as to render the petition invalid."

We have previously set forth the provisions of K.S.A. 19-101a(b), but it states:

"Counties shall apply the *powers of local legislation* granted in subsection (a) [the home rule powers provision] *by resolution* of the board of county commissioners. If no statutory authority exists for such *local legislation* other than that set forth in subsection (a) and the local legislation proposed under the authority of such subsection is not contrary to any act of the legislature, such local legislation

*shall become effective upon passage of a resolution of the board and publication in the official county newspaper.*" (Emphasis added.)

The commentator we have previously relied upon concludes: "Home rule power of counties must be exercised by the board of county commissioners by resolution. K.S.A. 19-101a(b)." Heim, Kansas Local Government Law § 3.24, p. 3-9.

The last sentence of K.S.A. 26-502 states that "[n]o defect in form which does not impair substantial rights of the parties shall invalidate any proceedings."

The failure to initially adopt and publish a resolution, while erroneous, is not a defect of such magnitude as to require the eminent domain proceeding to fail. There is no shown prejudice to GBC and Tolbert from the manner the condemnation proceedings were commenced.

Further, proper proceedings had taken place before the funds necessary for the taking to be accomplished were deposited in the district court. Consistent with the trial court's decision is the holding in *Piper v. Moore*, 163 Kan. 565, 573, 183 P.2d 965 (1947), where in discussing ratification, the opinion states:

"That power to take action includes the right to ratify was determined early in the history of jurisprudence in this jurisdiction.

"In *State v. Comm'rs of Pawnee County*, 12 Kan. 426, we held:

'It is a general principle of almost universal application that whenever a state, county, corporation, partnership, or person has power originally to do a particular thing, it also has the power to ratify and make valid an attempted effort to do such thing, although the same may have been done ever so defectively, informally, or even fraudulently in the first instance.' (Syl. ¶ 5.)

"And at page 439 of the opinion in that case said:

'. . . This principle is so elementary in its nature that it requires no citation of authorities to uphold it.' "

See 5, McQuillin, Municipal Corporations § 16.93, pp. 411-12 (3d ed. rev. 1996).

Enactment and publication of the resolution cured any possible defect. No substantial right was impaired. The eminent domain proceedings are valid.

*Does K.S.A. 19-4103 create an independent authority for the county's actions in exercising the right of eminent domain?*

There is no merit in GBC and Tolbert's contention that the county should not have relied on K.S.A. 19-4103 in its condemnation petition as a source of power of eminent domain.

The county's petition for eminent domain stated:

"The authority for the proposed taking is K.S.A. 19-101 (Home Rule) which provides that boards of county commissioners shall have the implied home rule authority to ' . . . do all other acts in relation to the property and concerns of the county, necessary to the exercise of its corporate or administrative powers' and K.S.A. 19-4101 *et seq.* (Economic Development Programs) which authorizes the use of county funds to encourage economic development. *See* Kan. Atty. Gen. Op. No. 86-40, pp. 3-4 (' . . . a county does have the implied power to exercise eminent domain authority under its home rule power and 19-4103' to obtain property for economic development)."

K.S.A. 19-4103 states:

"Any such county establishing an economic development program under this act may utilize the funds herein authorized to conduct studies and prepare comprehensive plans for its future economic growth and development; to inventory the services, facilities and resources of the entire county; to promote, stimulate and encourage the growth and development of the agriculture, commerce and industry of the county as a whole, in order to achieve maximum utilization of its human, economic and natural resources and tourist attractions; and to otherwise promote the general economic welfare and prosperity of the area."

As we have previously stated, the district court correctly read K.S.A. 2001 Supp. 19-101a, K.S.A. 19-3801 *et seq.*, and K.S.A. 19-4101 *et seq. in pari materia.* There is clear power of eminent domain in K.S.A. 2001 Supp. 19-101a, and the related statutory provisions only bolster that conclusion. The petition was not based on K.S.A. 19-4103 being an independent source of eminent domain. Thus, whether it is or is not is of no significance.

*Does the proposed taking meet the "public purpose" test?*

GBC and Tolbert next assert the taking of the property by the county does not meet the public purpose test.

We said in *State ex rel. Tomasic v. Unified Gov't of Wyandotte County/Kansas City*, 265 Kan. 779, 788-89, 962 P.2d 543 (1998):

"This court has held that there is no precise definition of what constitutes a valid public use, and what may be considered a valid public use or purpose changes over time. [Citation omitted.] Further, this court has noted that as long as a

governmental action is designed to fulfill a public purpose, the wisdom of the governmental action generally is not subject to review by the courts. [Citation omitted.]"

The landowners argue the Board failed to make a specific finding of public purpose and because their properties might ultimately be sold to private companies, the public purpose test was not met.

The county maintains that it properly determined it was necessary to take GBC and Tolbert's properties for the purpose of economic development and to create an industrial park in Shawnee County. According to the county, the legislature, the Kansas Attorney General, and this court all agree that counties can acquire property to develop industrial sites in order to accomplish the valid public purpose of encouraging economic development.

We first turn to Kansas statutes. K.S.A. 19-4101 authorizes counties to "establish and conduct a program for its future economic growth and development in accordance with the provisions of this act." K.S.A. 19-3801 states that "[f]or the purpose of encouraging development in this state . . ." boards of county commissioners "shall have the power . . . to incorporate, organize and enlarge industrial districts . . . ." These Kansas statutes implicitly recognize that the establishment of industrial parks aids the valid public purpose of encouraging economic development.

We have endorsed the view that "the development of recreational facilities and the facilitation of economic development in partnership with private enterprise have been considered legitimate public purposes for the exercise of eminent domain and the expenditure of public money." *State ex rel. Tomasic*, 265 Kan. at 789. We explained further:

" 'It is elementary that the legislature possesses no power to authorize the appropriation of one's property for a private use or purpose, but it is equally well-settled that the right to take private property for a public use is inherent in the state, and that the legislature may authorize the acquisition and appropriation of private property for a public use provided the owner is compensated therefor. [Citation omitted.] The difficulty often encountered lies in the inability of courts comprehensively to define the concept of a public use or purpose, due, no doubt, to the exigencies shown by the facts and the diversity of local conditions and circumstances in an everchanging world.

" 'In our opinion the concept of the terms public purpose, public use, and public welfare, as applied to matters of this kind, must be broad and inclusive. . . . The mere fact that through the ultimate operation of the law the possibility exists that some individual or private corporation might make a profit does not, in and of itself, divest the act of its public use and purpose.' " *State ex rel. Tomasic*, 265 Kan. at 789-90 (quoting *State, ex rel. Fatzer v. Urban Renewal Agency of Kansas City*, 179 Kan. 435, 438, 296 P.2d 656 [1956]).

We hold the development of an industrial park here fits within the valid public purpose of encouraging economic development. Substantial competent evidence to justify such a finding was presented at the injunction hearing. The public purpose test is clearly met.

*Did the district court abuse its discretion when it denied injunctive relief to GBC and Tolbert?*

We easily answer the final assertion of error that a sufficient showing was made to justify the issuance of the injunction and the landowners should be restored to the possession and ownership of the property.

Our standard of review of this issue is whether the trial court abused its discretion. We held in *Huser v. Duck Creek Watershed Dist. No. 59*, 234 Kan. 1, Syl. ¶ 4, 668 P.2d 172 (1983), that "[t]he granting or denial of an injunction is, generally speaking, discretionary. Absent an abuse of that discretion, the appellate court will not normally interfere."

Additionally, the district court found that landowners failed in their burden of proof as to any of the four factors required under *Wichita Wire, Inc. v. Lenox*, 11 Kan. App. 2d 459, 462, 726 P.2d 287 (1986). A negative finding will not be disturbed by an appellate court absent proof of an arbitrary disregard of undisputed evidence or some extrinsic consideration such as bias, passion, or prejudice. *In re Estate of Haneberg*, 270 Kan. 365, 374, 14 P.3d 1088 (2000).

Landowners argue that requiring them to show "irreparable harm" is not proper. The county argues the district court properly denied the requested injunction because of the failure by GBC and Tolbert to present a sufficient factual or legal justification for issuing the injunction. We agree with the county and the district court.

In *Wichita Wire*, 11 Kan. App. 2d at 462, the Court of Appeals set forth four prerequisites for injunctive relief:

"At the trial level, the burden of proof in an injunction action is upon the movant. *U.S.D. No. 503 v. McKinney*, 236 Kan. at 227. In defining this burden, it has been generally held that the movant must establish a prima facie case showing a reasonable probability that he will ultimately be entitled to the relief sought. The movant has the additional burden of showing a right to the specific injunctive relief sought because irreparable injury will result if the injunction is not granted. *There must be a probable right and a probable danger. Crowther v. Seaborg*, 415 F.2d 437, 439 (10th Cir. 1969). This test has often been expanded into four prerequisites which the moving party seeking a temporary or preliminary injunction must establish:

'(1) substantial likelihood that the movant will eventually prevail on the merits; (2) a showing that the movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing parties; and (4) a showing that the injunction, if issued, would not be adverse to the public interest.' [Citations omitted.]"

The district court did not rely only on the absence of a showing of irreparable harm, but found it was unlikely that GBC and Tolbert would prevail on the merits, there was no evidence the county's planned use of the properties would not benefit the public interest, and the damage the proposed injunction may cause the county was much greater than the threatened injury. There was a failure of the burden of proof as to all four *Wichita Wire* factors. The injunction was clearly properly denied.

The district court properly analyzed all the issues, reached a correct result, and is affirmed.

ABBOTT, J., not participating.

LARSON, S.J., assigned.