(95 P.3d 655)
No. 90,656

BONNER SPRINGS UNIFIED SCHOOL DISTRICT NO. 204, *et al.*, *Appellants*, v. BLUE VALLEY UNIFIED SCHOOL DISTRICT NO. 229, *et al.*, *Appellees*.

Opinion filed August 13, 2004.

*David Duckers*, of Horner & Duckers, of Kansas City, and *Patricia A. Brannan* and *Audrey J. Anderson*, of Hogan & Hartson L.L.P., of Washington, D.C., for appellants.

*Michael G. Norris*, of Norris, Keplinger & Hillman, L.L.C., of Overland Park, and *W. Joseph Hatley, John L. Vratil, Curtis L. Tideman*, and *Alok Ahuja*, of Lathrop & Gage L.C., of Overland Park, for appellees Johnson County Unified School Districts Nos. 229, 230, 232, 233, and 512.

*LeeAnne Hays Gillaspie*, of Johnson County Legal Department, of Olathe, for appellee Board of County Commissioners of Johnson County.

*Wm. Scott Hesse*, assistant attorney general, and *Phill Kline*, attorney general, for appellees Lynn Jenkins, State Treasurer, and State of Kansas.

Before GREENE, P.J., JOHNSON and MALONE, JJ.

GREENE, J.: Four Wyandotte County school districts and 10 individual parents of Wyandotte County students appeal the district court's denial of their motion for a temporary injunction to prohibit the distribution of revenues from a Johnson County sales tax to Johnson County school districts, arguing that the distribution and receipt of such sales tax revenues violate the School District Finance and Quality Performance Act (the Act), K.S.A. 72-6405 *et seq.*, and the Kansas Constitution. The district court concluded that the standards for issuance of a temporary injunction had not been met. We question plaintiffs' standing and remand for further proceedings, but we affirm the district court's denial of a temporary injunction.

### *Factual and Procedural Background*

In June 2002, four of six Johnson County school districts enacted resolutions requesting the Johnson County Board of County Commissioners (BOCC) to submit to the electorate the question of imposing a countywide retailers' sales tax in the amount of ¼ of one cent, with the revenues to be distributed

"as required by law, 64% to the County and 36% to the cities of Johnson County, and the County share to be used to fund and award economic development and public benefit grants to public school districts located within Johnson County, Kansas . . . ."

Upon receipt of these resolutions, the BOCC submitted the question to the electors of Johnson County pursuant to K.S.A. 12-187,

and on August 6, 2002, the question was approved by approximately 61% of voters. The new local sales tax became effective January 1, 2003, and was expected to raise $42 million for six Johnson County school districts.

On March 4, 2003, the Wyandotte County plaintiffs filed an action in district court against the Johnson County school districts, the BOCC, and the State Treasurer, seeking declaratory and injunctive relief to suspend distribution to and receipt by Johnson County school districts of revenues from the new sales tax. Specifically, the petition alleged that use of local option sales tax revenues for public education was (i) contrary to the Act, K.S.A. 72-6405 *et seq.*, (ii) violative of Article 6, §§ 1, 6 of the Kansas Constitution, and (iii) violative of § 1 of the Bill of Rights of the Kansas Constitution; alternatively, the petition sought a declaration that the subject tax revenues should be deemed "local effort" for purposes of K.S.A. 72-6410(c), thus affecting the Johnson County school districts' entitlement to state financial aid pursuant to K.S.A. 72-6416.

Contemporaneous with the filing of their petition, plaintiffs filed a motion for temporary injunction, requesting that sales tax revenues not be paid to or received by Johnson County school districts. In their response to this motion, defendants argued that the standards for temporary injunctive relief had not been met and challenged plaintiffs' standing to maintain the action. After briefing and argument, the district court declined to issue a temporary injunction, concluding that (i) plaintiffs had not demonstrated a substantial likelihood of success on the merits; (ii) plaintiffs failed to establish a probability that they would suffer irreparable financial harm; (iii) the balance of harm to both parties was equal; and (iv) the issuance of a temporary injunction would be adverse to the public interest. The district court did not explicitly address the issue of plaintiffs' standing, noting that the issue was "not directly related to the issuance of a temporary injunction."

The Wyandotte County plaintiffs appeal pursuant to K.S.A. 60-2102(a)(2). The Johnson County defendants do not cross-appeal, but the BOCC challenges plaintiffs' standing on appeal as a jurisdictional issue.

### *Do Wyandotte County Plaintiffs Have Standing To Challenge Distribution of Johnson County Local Sales Tax Revenues?*

Although the district court chose not to address standing, we consider the issue critical to the jurisdiction of the district court and this court as well. See *Families Against Corporate Takeover v. Mitchell,* 268 Kan. 803, 806, 1 P.3d 884 (2000); *Dillon Stores v. Board of Sedgwick County Commr's,* 259 Kan. 295, 303, 912 P.2d 170 (1996). It has long been recognized that standing imparts justiciability and must be determined as a threshold issue. See, *e.g., Harrison v. Long,* 241 Kan. 174, 176, 734 P.2d 1155 (1987). The question of standing requires us to determine whether these plaintiffs have a sufficient stake in the outcome of this controversy to justify the exercise of the court's remedial powers on their behalf. *Moorhouse v. City of Wichita,* 259 Kan. 570, 574, 913 P.2d 172 (1996).

Plaintiffs essentially argue three alternative bases for their claims of standing: (i) They construe K.S.A. 60-907 as "open[ing] the courthouse doors" to anyone challenging the illegal levy of any tax; (ii) they contend that the parent plaintiffs are "persons whose property is or may be affected or whose taxes may be increased" since they shop in Johnson County and therefore pay the tax; (iii) they contend that they have sustained special damages different in kind from that of the public generally because they have children attending public schools in Wyandotte County and have been placed at a competitive disadvantage by the Johnson County schools' receipt of new sales tax revenues. For reasons discussed below, we reject bases (i) and (ii) as a matter of law, but we remand for an evidentiary hearing to address basis (iii).

### *Applicability of K.S.A. 60-907*

K.S.A. 60-907 addresses injunctive relief against illegal levy or collection of a tax but does not expressly address relief against illegal distribution of tax revenues. K.S.A. 60-907 provides in relevant part:

"(a) *Illegal tax, charge or assessment.* Injunctive relief may be granted to enjoin the illegal levy of any tax, charge or assessment, the collection thereof, or any proceeding to enforce the same."

This statute has been construed broadly by Kansas appellate courts to permit actions against levy and collection of illegal taxes, but the courts have carefully limited its use to cases where the act to be enjoined was either a levy or collection of a tax. See *Schulenberg v. City of Reading*, 196 Kan. 43, 48-51, 410 P.2d 324 (1966). Our courts have been clear in permitting no application of the statute to arguably related controversies that posed no specific challenge to a levy or collection of taxes. See, *e.g., Bodine v. Osage County Rural Water Dist. #7*, 263 Kan. 418, 428-29, 949 P.2d 1104 (1997) (statute cannot be used to challenge a water purchase contract despite claims that it resulted in an illegal tax); *J. Enterprises, Inc. v. Board of Harvey County Comm'rs*, 253 Kan. 552, 558-61, 857 P.2d 666 (1993) (statute not applicable where plaintiff had not exhausted administrative remedies); *Blevins v. Board of Douglas County Comm'rs*, 251 Kan. 374, 381-82, 834 P.2d 1344 (1992) (statute cannot be used to challenge county authority to spend proceeds from bonds and notes previously declared lawful and valid); *DeForest v. Herbert*, 204 Kan. 516, 520-22, 464 P.2d 265 (1970) (statute cannot be used to question the legality of corporate existence of political subdivisions).

Here, plaintiffs do not seek to enjoin the levy or collection of the sales tax; instead, their motion for temporary injunction seeks to "enjoin the public school districts in Johnson County from receiving, and Johnson County and the State Treasurer from paying to them, the receipts of the one-fourth of one cent countywide retailers' sales tax that takes effect on January 1, 2003." The authority of the BOCC to levy and collect a sales tax pursuant to the applicable statutory scheme has not been challenged directly by the motion for temporary injunctive relief. Moreover, defendants note that plaintiffs were too late to seek injunctive relief against the levy or collection of the tax because injunctive relief is available only to future events, citing *Mid-America Pipeline v. Wietharn*, 246 Kan. 238, 242, 787 P.2d 716 (1990).

Although plaintiffs have argued in their appellate brief that their initial petition sought a declaration that the sales tax was void, these allegations are not determinative of the applicability of K.S.A. 60-907 since they are unrelated to any claim for injunctive relief.

Moreover, these claims appear to have been abandoned or re-
served given the scope and focus of plaintiffs' temporary injunction
pleadings. In any event, we limit our review to the motion for
temporary injunction, which failed to challenge levy or collection
and which restricted the relief sought to that quoted above. We
decline to address whether plaintiffs have standing to seek declar-
atory relief since that issue is not before us. See *Board of Lincoln
County Comm'rs v. Nielander*, 275 Kan. 257, 268, 62 P.3d 247
(2003).

We conclude that K.S.A. 60-907 is inapplicable where plaintiffs
do not seek exclusively to enjoin the levy or collection of a tax but
rather seek to enjoin the distribution and receipt of revenues from
a sales tax that has already been levied and partially collected.

### *Absent Statutory Authority, Have Wyandotte County Plaintiffs Demonstrated Standing to Enjoin the Johnson County Sales Tax?*

Kansas has long recognized that a private person, merely by vir-
tue of being a citizen and taxpayer, may not maintain an action
against a public board or its members unless the person pleads and
proves that as a result of the action complained of, he or she has
or will suffer special damage distinct in kind from that of the public
generally. *Asendorf v. Common School Dist. No. 102,* 175 Kan. 601,
607-08, 266 P.2d 309 (1954); *Haines v. Rural High School Dist.
No. 3,* 171 Kan. 271, Syl. ¶¶ 1, 2, 232 P.2d 437 (1951); *Nixon v.
School District,* 32 Kan. 510, Syl., 4 Pac. 1017 (1884); *Winters v.
Kansas Hospital Service Ass'n, Inc.,* 1 Kan. App. 2d 64, 69, 562
P.2d 98 (1977).

This general principle is particularly applicable where an action
seeks to enjoin a public official relative to the use of public funds.
*Weinlood v. Simmons,* 262 Kan. 259, 267, 936 P.2d 238 (1997);
*Robinson v. Board of County Commissioners,* 210 Kan. 684, 687,
504 P.2d 263 (1972). As stated by our Supreme Court:

"The longstanding general rule in Kansas is that a taxpayer may not challenge the
expenditure of county funds unless he is peculiarly damaged by the county's ac-
tions. [Citation omitted.]

. . . .

". . . [Plaintiff's] objection is to the use of tax funds. Absent a showing he was injured differently than other members of the public, [plaintiff] has no standing to raise the issue.

. . . .

"[Plaintiff's] remedy, if any, is in the political arena rather than the courts . . . ." *Crow v. Board of Shawnee County Commr's*, 243 Kan. 287, 289-90, 755 P.2d 545 (1988).

Actions to protect the public at large must be brought by the proper public official. See, *e.g.*, *Weinlood*, 262 Kan. at 267; *State, ex rel., v. Cruzan*, 120 Kan. 316, 320-21, 243 Pac. 329 (1926).

Given our conclusion that K.S.A. 60-907 is inapplicable to plaintiffs' action, we must analyze their claims of standing under this longstanding rule in Kansas: Have plaintiffs shown that they will suffer peculiar damages from the distribution of revenues from the new Johnson County sales tax or are their purported damages identical to that of the public at large? We conclude that, as a matter of law, plaintiffs have no standing by reason of their claim that they shop in Johnson County and pay the sales tax at issue. We then conclude that the record is incomplete on whether they have standing by reason of "competitive disadvantage" to their schools, and we remand for an evidentiary hearing on this claim.

*First*, plaintiffs claim that they have standing because they shop in Johnson County and therefore are obliged to pay the new sales tax. This claim of standing fails for three reasons: (i) As noted by defendants, plaintiffs are under no compulsion to shop in Johnson County; we hold that plaintiffs cannot acquire legal standing by submitting themselves unnecessarily to a purported injury (*volenti non fit injuria*); (ii) this claim of injury is not unique to plaintiffs; in fact, payment of the new sales tax is precisely the injury suffered by *anyone* who shops in Johnson County and can only be redressed by the proper public official; (iii) payment of the tax is not an injury caused by the acts complained of; payment of the tax is an injury resulting from the *levy and collection* of the sales tax (which *is not* the subject of plaintiffs' challenge), not the *distribution and receipt* of the revenues generated by the tax (which *are* the subject of plaintiffs' challenge). Plaintiffs' first claim of standing fails as a matter of law.

*Second,* plaintiffs' claim that each of the plaintiff groups—parents and school districts—have standing because of the competitive disadvantage created by the additional revenues to the Johnson County schools. Their precise claims are:

"[U]nlike members of the public in general, [plaintiff parents] have children attending public schools in Wyandotte County, and to the extent the schools attended by their children are placed at a disadvantage, including a competitive disadvantage for attracting and retaining teachers and other professional personnel, those parents are harmed because their children have lesser access to tax revenue for public education than do the children who attend public schools in the neighboring county. The school district plaintiffs have alleged harm in a manner different from the general public because they have the responsibility to provide educational opportunities for the students in their districts, and that responsibility is more difficult to meet when the neighboring jurisdictions have an additional source of tax revenue."

Defendants suggest that these claims were completely unsupported by any evidence at the hearing on the motion for temporary injunction and are "dependent upon a chain of assumptions that stretches far beyond the bounds of particularized injury and deep into the territory of rank speculation." Notwithstanding the potential difficulty of establishing their claim of competitive disadvantage—especially since there were disparities already existent prior to this sales tax—if these parents and school districts are successful in showing that they have been uniquely injured by distribution of the sales tax revenues, they may have adequate standing for their challenge.

We conclude that plaintiffs' claims of standing based on competitive disadvantage do not fail as a matter of law and that the record does not permit final determination of the issue due to its factual incompleteness. We remand for a complete evidentiary hearing and legal determination of plaintiffs' claims of standing based on competitive disadvantage, applying principles not inconsistent with this opinion. We contemplate that on remand the district court will examine plaintiffs' claims in detail and that its analysis will include consideration of defendants' responsive argument that there is no legal impediment to the Wyandotte County school districts enacting similar resolutions and seeking countywide ap-

proval of a similar supplemental local sales tax for their school districts.

### Did the District Court Abuse Its Discretion in Denying Plaintiffs a Temporary Injunction?

We review the district court's denial of a temporary injunction for an abuse of discretion. *General Building Contr., L.L.C. v. Board of Shawnee County Comm'rs*, 275 Kan. 525, 541, 66 P.3d 873 (2003). The burden is on an appellant to show that the district court abused its discretion. *Comanche County Hospital v. Blue Cross of Kansas, Inc.*, 228 Kan. 364, 367, 613 P.2d 950 (1980). To the extent that the denial of injunctive relief is based upon statutory construction, our review of the district court's statutory interpretation is unlimited. See *General Building Contr.*, 275 Kan. at 533.

The district court correctly applied the four-factor test for temporary injunctive relief adopted by this court in *Wichita Wire, Inc. v. Lenox*, 11 Kan. App. 2d 459, 462, 726 P.2d 287 (1986). This test requires that the party seeking such relief establish:

" '(1) substantial likelihood that the movant will eventually prevail on the merits; (2) a showing that the movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing parties; and (4) a showing that the injunction, if issued, would not be adverse to the public interest. [Citations omitted.]' " 11 Kan. App. 2d at 462.

On appellate review, these four factors guide our analysis of the district court's findings and conclusions. See *General Building Contr.*, 275 Kan. at 542.

### Substantial Likelihood of Success on the Merits

In finding no demonstration of a likelihood of success on the merits by plaintiffs, the district court summarized its rationale as follows:

"After reviewing the interplay of K.S.A. 12-187 (which permits the County to levy and collect sales taxes), K.S.A. 19-4101 through 4103 (which permits the County to promulgate economic development programs), and K.S.A. 72-8210 (which permits a school district to receive donations), the Court cannot find that the plaintiffs have demonstrated a substantial likelihood of success."

Plaintiffs argue that "two key flaws" in this rationale demonstrate an abuse of discretion by the district court: (i) The court failed to recognize the role played by the defendant school districts in imposing the new sales tax, and (ii) characterization of locally generated sales tax revenues instigated by the school districts as a permissible "donation" is a misconstruction of applicable statutes. For reasons discussed below, we disagree and find no abuse of discretion in the district court's findings of fact and conclusions of law in analyzing the likelihood of success.

With regard to the first purported "flaw," we note that the district court found that the record did not reveal the full extent to which the Johnson County school districts were instigators of the subject sales tax but "assumed that they played a major role in urging the BOCC to take its action." The question is whether the assumed major involvement of these school districts was unlawful or rendered the subsequent actions of the BOCC unlawful. Plaintiffs cite no authority whatsoever to support their implication for the unlawfulness or impropriety of the school districts' involvement in enacting the resolutions that triggered the ballot question, and we find none. We view the school districts' involvement as being akin to solicitation for financial assistance; even if the BOCC was required to submit the ballot question, the electorate had every opportunity to "just say no." Based upon the limited record developed for purposes of the motion for temporary injunction, we conclude that the district court's rationale was not analytically flawed in this regard and there was no abuse of discretion.

With regard to the second purported "flaw," we do not conclude that the district court's acceptance of defendants' characterization of the manner of the subject revenue distribution as a permissible donation was an abuse of discretion. Clearly, the BOCC was permitted to transmit sales tax revenues to the school districts; indeed, it has long been recognized that county commissioners have exclusive control over county expenditures, including donations of public property to private concerns. See *Crow*, 243 Kan. at 290; *Ullrich v. Board of Thomas County Commr's*, 234 Kan. 782, 788-90, 676 P.2d 127 (1984); *Hackler v. Board of County Commissioners*, 189 Kan. 697, 698, 369 P.2d 782 (1962). Given the adoption by the

electorate of the special question expressly characterizing the purpose of the tax as being "to fund and award economic development and public benefit *grants* to public school districts" (emphasis added), plaintiffs' efforts to defy this characterization must fail. If the transaction is not characterized as a donation, it would be difficult if not impossible to characterize the transaction in some other manner and remain consistent with the authorizing resolution.

With regard to the school districts' receipt of such funds, plaintiffs concede that there is no express statutory prohibition against such *receipt*, but plaintiffs argue that receipt would violate the purpose or "spirit" of the Act, which they argue

"carefully limits the extent of ad valorem property taxation (K.S.A. 72-6431), names other sources of local tax effort (*e.g.*, K.S.A. 72-6410), and specifies the limited extent to which local school district authorities may augment their budgets locally (K.S.A. 72-6433). The District Court erred in finding in the 'donation' provision of the statute a loophole that would permit school districts to receive an unlimited amount of local sales tax revenue, utterly regardless of the impact on funding equity for public education across the state."

Plaintiffs also contend that the district court's construction and application of the statute has constitutional implications.

Although certain aspects of the school finance statutory scheme were intended to achieve funding equity or at least reduce disparities among school districts, such equity was not intended to be rigidly inviolate. See *U.S.D. No. 229 v. State*, 256 Kan. 232, 272, 885 P.2d 1170 (1994), *cert. denied* 515 U.S. 1144 (1995) ("One of the basic purposes of the Act is to reduce the disparity among the districts."). In fact, we note that the legislature has expressly permitted various funding vehicles and adjustments that are *not* consistent with this purpose or "spirit," including: (i) weighting factors (K.S.A. 72-6411 *et seq.*); (ii) limited local option budgets (K.S.A. 72-6433 *et seq.*); (iii) local capital outlays (K.S.A. 72-8801 *et seq.*, unlimited by K.S.A. 2003 Supp. 79-5040); (iv) miscellaneous revenues, unlimited if properly designated (K.S.A. 72-6427); and (v) bequests and donations, unlimited if placed in separate funds (K.S.A. 72-8210).

Plaintiffs may consider these local option funding vehicles and adjustments as loopholes, but we view them as manifestations of

legislative intent to preserve some degree of local autonomy at the expense of statewide equity; plaintiffs' efforts to be relieved from any such loophole as an obstacle to statewide funding equity among school districts should be directed to the legislature, not the courts. Defendants argue and the record supports that Wyandotte County schools have received multimillion dollar grants from private foundations that would have been prohibited if the statutes were strictly construed by adherence to the purported purpose or spirit of equity among school districts. We agree. Based upon the limited record before it, the district court's construction of the statutory scheme and its characterization of the sales tax revenue distributions were not flawed and there was no abuse of discretion.

We are similarly unimpressed with plaintiffs' constitutional claims. We do not agree that our Supreme Court has held that "disparities in funding" are infirm under the Education Clause of Article 6 of the Kansas Constitution or the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. In fact, in *U.S.D. No. 229*, 256 Kan. at 274, our Supreme Court acknowledged the lack of uniformity of funding among school districts, yet upheld the constitutionality of the Act. Although *U.S.D. No. 229* did not immunize more recent revisions of the Act from constitutional challenge, see *Montoy v. State*, 275 Kan.145, Syl. ¶ 3, 62 P.3d 228 (2003), we are disinclined to predict the outcome of *Montoy v. State (Montoy II)*, No. 92,032, which is pending before our Supreme Court, especially in the mere context of reviewing the denial of a temporary injunction. Since this matter must be remanded in any event, it is likely that our Supreme Court's decision in *Montoy II* will be available for the district court's analysis before any final decision on the merits is made in this litigation. We conclude that plaintiffs did not demonstrate a likelihood of success on their constitutional claims.

*Demonstration of Irreparable Injury Absent Injunction*

In finding that plaintiffs failed to sustain their burden to show irreparable harm unless the injunction issued, the district court concluded: (i) Even if the sales tax revenues were declared part of the "local effort," this would not increase funds received by Wy-

andotte County school districts; (ii) if plaintiffs ultimately prevail, there exists a statutory mechanism in K.S.A. 72-6418 to remit overpayments to the state treasurer; (iii) any diminution in any statewide effort to force legislative remedies to school financing due to Johnson County's sales tax solution was far too speculative to support a temporary injunction.

Plaintiffs argue on appeal that their irreparable harm is the competitive disadvantage resulting from the excess funding to Johnson County schools. They argue:

"[T]he defendant school districts are receiving millions of dollars in the current school year that permit them to compete more effectively for high quality teachers and other personnel. No monetary compensation to the plaintiffs at the conclusion of this case can make up to the school district plaintiffs for what could be several years of being at a disadvantage, not contemplated by the School Finance Act or the Kansas Constitution, in providing the same quality of educational opportunity to their students as the neighboring districts . . . . As for the plaintiff parents of children in Wyandotte County public schools, no later remedy can make up for years of schooling that do not measure up to that experienced by their peers in the county next door."

We conclude that the district court did not abuse its discretion in finding no irreparable harm sufficient to enjoin revenue distributions. *First,* we note that plaintiffs will have a full and complete opportunity to develop their competitive disadvantage evidence on remand for purposes of standing and this evidence will serve to build a complete record for final determination on the merits. *Second,* we agree that there is a statutory mechanism for repayment in the event that plaintiffs ultimately succeed on the merits and this may serve as an adequate remedy at law. See K.S.A. 72-6418. We view plaintiffs' claims of the loss of educational momentum due to delay in this remedy as insufficient for a showing of irreparable injury. See *Merrill Lynch, Pierce, Fenner & Smith v. de Liniere,* 572 F. Supp. 246, 249 (N.D. Ga. 1983), quoted with approval in *Wichita Wire,* 11 Kan. App. 2d at 465. *Third,* plaintiffs' claim that the Johnson County sales tax will diminish the statewide effort for remedial school finance legislation is entirely too speculative to support a temporary injunction.

We conclude that the district court properly analyzed plaintiffs' claims of irreparable injury and did not abuse its discretion in finding no such injury.

### Balance of Harm Analysis

In finding the balance of harm "equal" the district court reasoned:

"Since the plaintiffs would receive no extra funding if the temporary injunction issues, but the Johnson County districts would be hampered in their efforts to budget for next year and to negotiate with prospective teachers, does the potential harm to the movants outweigh the potential harm to the defendants?

"Both parties make good arguments regarding the harm that their budgeting process and teacher negotiation process will suffer. However, the balance of harm seems absolutely equal."

The only argument offered by plaintiffs on appeal is that the district court failed to consider that plaintiffs are purportedly suffering violations of statutory and constitutional provisions, citing *O Centro Espirita Beneficiente Uniao v. Ashcroft*, 342 F.3d 1170, 1187 (10th Cir. 2003), and *Johnson v. Miller*, 929 F. Supp. 1529, 1560 (S.D.Ga. 1996). Since plaintiffs have failed to demonstrate that they have a likelihood of success on these claims, we disagree that the purported violations should tip the balance of harm analysis. We conclude that there was no abuse of discretion by the district court in concluding that the balance of harm was equal, thus supporting the denial of temporary injunctive relief.

### Public Interest Analysis

The district court found that temporary injunctive relief would be adverse to the public interest principally because of the need to uphold public elections and defer to legislative determinations, citing and quoting from *Lambeth v. Levens*, 237 Kan. 614, 621, 702 P.2d 320 (1985); *State ex rel. Tomasic v. City of Kansas City*, 237 Kan. 572, 579, 701 P.2d 1314 (1985); and *Ullrich*, 234 Kan. at 789.

Again, plaintiffs' only challenge to the district court's conclusion is that the court failed to consider that it was adverse to the public interest to permit the purported statutory and constitutional violations to continue for the duration of the case. We treat this ar-

gument here in the same fashion it was treated in reviewing the balance of harm: If plaintiffs have failed to demonstrate a likelihood of success on the merits of such claims, we see no need to consider the purported violations as adverse to the public interest. We conclude that the district court did not abuse its discretion in finding that the issuance of temporary injunctive relief to plaintiffs would be adverse to the public interest.

### Summary and Conclusion

In summary, we have concluded that the issue of plaintiffs' standing to maintain this action must be addressed as a threshold issue, and we remand for an evidentiary hearing and legal determination of this issue. We conclude that the district court did not abuse its discretion in denying temporary injunctive relief to plaintiffs.

We remind the parties that our review has been conducted solely on the record generated through the temporary injunction proceedings and has been limited in scope to a review for abuse of discretion, applying the standards for temporary injunctive relief. We do not intend this opinion to be a final determination on the merits of plaintiffs' claims. See *Wichita Wire*, 11 Kan. App. 2d at 464. We contemplate that a full development of the record, together with the inevitable evolution of case law construing applicable statutory and constitutional provisions, will enable the district court to achieve a comprehensive, final determination that may or may not be at variance with the views expressed in its opinion denying temporary injunctive relief.

Affirmed in part and remanded with directions.